430 So.2d 832 (1983)
John Walter READ and Cathy Bennett Read
v.
STATE of Mississippi.
No. 53567.
Supreme Court of Mississippi.
March 23, 1983.
Rehearing Denied May 18, 1983.
*833 Roy Pitts, Franklin Coleman, Meridian, for appellants.
Bill Allain, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
PART I  JUSTICE ROY NOBLE LEE
PART II  JUSTICE JAMES L. ROBERTSON

PART I
ROY NOBLE LEE, Justice, for the Court:
John Walter Read and Cathy Read, husband and wife, were jointly indicted, tried and convicted in the Circuit Court of Jackson County, Honorable Clinton E. Lockard, presiding, for possession with intent to deliver a controlled substance prohibited by Mississippi Code Annotated §§ 41-29-115, -117, and -119 (1972). John Read was sentenced to fifteen (15) years in custody of the Mississippi Department of Corrections and a fine of fifteen thousand dollars ($15,000), and Cathy Read was sentenced to ten (10) years and a fine of five thousand dollars ($5,000). They have appealed, and assign five (5) errors in the trial below.
Evidence for the State indicates that on May 24, 1980, Captain Terry Warden of the Jackson County Sheriff's Office, acting on information obtained from a confidential informant, made affidavit before County Judge O.L. McLeod for a warrant to search the house where appellants were living in rural Jackson County. The search warrant was executed in the late afternoon of May 24, 1980, and, in appellant's bedroom, the officers found and seized over fifty-five (55) bottles containing five thousand three hundred eighty (5,380) pills and capsules, several with powder and paste, fourteen thousand two hundred forty dollars twenty-five cents ($14,240.25) in United States currency, and fifteen (15) assorted rifles and pistols, some of which were loaded. Subsequently, the appellants were indicted for possession with intent to deliver a controlled substance, flurazepam.
The officers also found in the bedroom a syringe and spoon on the dresser, and they observed articles of appellants' clothing and family pictures there. Photographs were made of the room and certain items found in it. Appellants were arrested, advised of their constitutional rights, and taken to the sheriff's office for processing.
*834 Dr. Sue Lauderdale, Associate Director of the Gulfport Branch of the Mississippi Crime Laboratory, examined the drugs. She took one sample from groups having identical colors and markings with commercial preparations, and analyzed them to confirm that they were the same substance. If they did not look identical to a commercial preparation, an individual test was conducted. The following is a list of the drugs found, all being controlled substances: Secobarbital, Phenobarbital, Oxycodone, Amobarbital, Hydromorphone, Amphetamine, Flurazepam and Methylphenidate, Methadol, Cocaine, Anilerioine, and Morphine.

I.
Did the lower court err in admitting evidence under an invalid search warrant?
Appellants contend that the information stated in the affidavit for the search warrant was insufficient to support a finding of probable cause, that the search pursuant thereto was illegal, and all evidence obtained under the search is tainted and inadmissible.
The affidavit was in a printed form with blank spaces to be filled for supplying information. Those parts of the printed form which were not applicable were blocked out. Following Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), in adopting a two-part test for the validity of search warrants, this Court in Strode v. State, 231 So.2d 779 (Miss. 1970), said:
The two-part test of Aguilar requires a magistrate to be informed of (1) some of the underlying circumstances from which the informer concluded that the defendant was the one guilty of the offense, and (2) some of the underlying circumstances from which the officer concluded that the informer was reliable. In short, under the basis-of-knowledge test, the informer must have obtained his knowledge by personal observation or in some other dependable manner rather than through casual rumor. The second reliability test is an attempt to guard against tips provided by untruthful or unreliable informers, and suggests that an informer is credible if he has provided truthful tips in the past. Moreover, the information may be deemed reliable if corroborated by independent investigation. Both tests require only that some of the underlying circumstances be sworn to. [231 So.2d at 783].
Subsection 3(b) of the form affidavit for the search warrant set forth that the informant advised on May 23, 1980, he
(1) Personally saw controlled substances ... demerol and marijuana, stored, kept, used and sold at the above-described place
(2) Personally saw John (last name unknown) sell controlled substances in the above-described place
* * * * * *
(4) Personally heard John (last name unknown) arrange to sell controlled substances, use controlled substances.
(5) Other: Narcotics Officers Warden and Wilks have received information on John (last name unknown) that he has been selling controlled substances at the address given over one month by no less than three other informants.
Subsection 3(a) of the affidavit states the following underlying circumstances relating to the credibility of the informant:
(1) Your affiant Terry Warden has known this person for a period of over two years and through his association with said person knows this person to be a truthful person.
(2) This person is gainfully employed and works regularly.
(3) Your affiant has interviewed this person and investigated his background and found him to be prudent, trustworthy, and reliable person.
(4) This person has furnished information in the past, which information has proven to be correct, accurate, and reliable.
In addition, Officer Warden gave oral information to Judge McLeod in support of the issuance of a search warrant. This Court has held that such testimony is admissible *835 and is supportive of a search warrant. Powell v. State, 355 So.2d 1378 (Miss. 1978), Prueitt v. State, 261 So.2d 119 (Miss. 1972).
In Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the United States Supreme Court expanded the two-part test of Aguilar in holding that, "If a tip is found inadequate under Aguilar, the other allegations which corroborate the information ... should be considered." 393 U.S. at 415, 89 S.Ct. at 588, 21 L.Ed.2d at 643. Thus, probable cause may be established by showing corroborating evidence obtained in a different way, viz, through independent police investigation.
Subsection 3(c) of the affidavit contains the following information:
C. Your affiant having received the information ... verified this information by personal observation in that:
(1) The place above described was placed under periodic surveillance for a period of over one month.
(2) Affiant(s) saw (heard)  Not applicable.
Although what was observed and discovered by surveillance of the premises was not specifically set forth, it, together with information about the statement of three (3) other informants, had some relevance to the fact that the appellants had been under suspicion for some time. In Spinelli, supra, the United States Supreme Court further stated:

[W]e do not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause. Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223 [228], 13 L.Ed.2d 142, 147 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial. McCray v. Illinois, 386 U.S. 300, 311, 87 S.Ct. 1056 [1062], 18 L.Ed.2d 62, 70 (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741 [745], 13 L.Ed.2d 684, 688 (1965); and that their determination of probable cause should be paid great deference by reviewing courts, Jones v. United States, 362 U.S. 257, 270-271, 80 S.Ct. 725 [735-736], 4 L.Ed.2d 697, 707, 708, 78 A.L.R.2d 233 (1960). (Emphasis added) [393 U.S. at 419, 89 S.Ct. at 590-591, 21 L.Ed.2d at 645].
The appellants also contend that the lower court erred in admitting into evidence firearms which were discovered in the bedroom. The firearms were relevant to the issues involved, and the lower court did not abuse its discretion in admitting them in evidence. Martin v. State, 413 So.2d 730 (Miss. 1982).

II.
Did the lower court err in declining to require disclosure of the informant's identity?
Appellants next contend that the court erred in declining to require the State to identify the informant for the reason that they were unable to prepare a full and adequate defense to the charges without knowledge of the informant's identity. The law pertaining to this question is well settled. In Pace v. State, 407 So.2d 530, 533 (Miss. 1981), the Court said:
There is no absolute rule requiring disclosure of an informer's identity. Recognition of the public interest and effective law enforcement has led to a privilege, although not absolute, of the prosecution to refuse disclosure of the identity of a confidential informer. Roviaro v. U.S., 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In Roviaro, the United States Supreme Court stated:
Where the disclosure of the informer's identity, or of the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. (353 U.S. at 60, 61, 77 S.Ct. at 628, 1 L.Ed.2d at 645).
The proper rule regarding the circumstances under which the identity of the *836 informer should be disclosed was stated in Young v. State, 245 So.2d 26 (Miss. 1971):
Ordinarily, disclosure of the identity of an informer, who is not a material witness to the guilt or innocence of the accused, is within the sound discretion of the trial court. Strode v. State, 231 So.2d 779 (Miss. 1970). On the other hand, where the informer is an actual participant in the alleged crime, the accused is entitled to know who he is. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)... . (245 So.2d at 27). [Mills v. State, 304 So.2d 651, 654 (Miss. 1974)].
It is clear from the record that the informant was not a participant in the crime, but that he personally saw drugs at the residence and related such information to the police. There is no indication or suggestion that he bought or used the drugs, and he was not present when the officers searched the house. See Daniels v. State, 422 So.2d 289 (Miss. 1982). This assignment is without merit.

III.
Was there prosecutorial misconduct resulting in prejudice?
Appellants argue that they were denied a fundamentally fair trial as a result of certain acts of the prosecution which violated their constitutional rights, particularly questions propounded by the prosecution to police officers with regard to specialized training and narcotics investigations. The record reflects that no objections were made concerning the officers' testimony about their specialized training. Also, the court ruled upon and denied disclosure of the informant's identity. Appellants also complain about portions of the State's argument. We have examined the record and find no merit in this assignment.

IV.
Are the indictments defective because they do not charge appellants with attempt to deliver "to another person?"
Appellants argue that the indictments lack an essential element of the charge because they did not charge appellants possessed the contraband with intent to deliver it to another person. Umphress v. State, 295 So.2d 735 (Miss. 1974), is distinguished from this case in that Umphress was charged with having delivered a controlled substance. The indictment was held defective because it did not state enough facts to inform the defendant of the specific charge against him. In the case sub judice, the specific charge is possession with intent to deliver as opposed to delivery alone. The indictment, in our opinion, is sufficient. Hollingsworth v. State, 392 So.2d 515 (Miss. 1981).

V.
Were the appellants denied effective assistance of counsel?
In the case sub judice, appellants were represented by two attorneys from Pensacola, Florida, and two attorneys from the Mississippi Gulf Coast. We have recently discussed the substantive standards by which ineffective assistance of counsel claims may be judged. See Callahan v. State, 426 So.2d 801 (Miss. 1983). Much of the matters complained of by appellants as to ineffective counsel may have been trial strategy. We have examined the record thoroughly and are unable to say that counsel was ineffective. See Part II (B), at page 837, and (E) at pages 841-842 below.
The State has not responded to the merits of this assignment, but contends that the Court cannot consider matters for the first time on appeal unless they are jurisdictional in nature, and that appellants are procedurally barred from raising this question on appeal, since it was not presented to the lower court. In view of the fact that such question is presented to this Court for the first time, the question will be addressed hereinafter.

PART II
ROBERTSON, Justice, for the Court:

A.
We expressly reject so much of the argument advanced by the State of Mississippi *837 as would have us hold that the ineffective assistance of counsel issue is procedurally barred here because it was not properly raised or preserved in the trial court. That argument is wrong because the Reads never had a meaningful opportunity to raise the issue in the court below.
In addition, that holding is completely at odds with the spirit of Brooks v. State, 209 Miss. 150, 46 So.2d 94 (1950). In Brooks, this Court, per Justice Percy M. Lee, recognized that
Errors affecting fundamental rights are exceptions to the rule that questions not raised in the trial court cannot be raised for the first time on appeal. [209 Miss. at 155, 46 So.2d at 97].
Today, however, state courts are being allowed not inconsiderable leeway when it comes to enforcing procedural rules to bar litigation of federal constitutional rights. Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Given such leeway, it is peculiarly appropriate that state courts be faithful stewards of those fundamental rights adjudication of which is thus entrusted to them. It is appropriate that this Court keep the spirit of Brooks alive. The State's brief would have us take advantage of this leeway  and, in effect, preclude any defendant ever raising the troublesome, unpleasant and no doubt frequently abused claim of ineffective assistance of counsel. The State's invitation should be rejected.

B.
We begin with an elementary proposition: one charged with an offense against the criminal laws of a state has a right to the effective assistance of counsel in making his or her defense. This is a right of constitutional dimensions. It is secured by the Sixth and Fourteenth Amendments to the Constitution of the United States. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Washington v. Strickland, 693 F.2d 1243, 1250 (5th Cir.1982); Berry v. State, 345 So.2d 613, 615 (Miss. 1977). This right is further secured to the citizens of this state by the Mississippi Constitution of 1890, Art. 3, § 26. Stewart v. State, 229 So.2d 53, 55 (Miss. 1969). This Court has also found a right to the effective assistance of counsel implicit in the due process clause found in the Mississippi Constitution of 1890, Art. 3, § 14. Brooks v. State, 209 Miss. 150, 155-156, 46 So.2d 94, 96-97 (1950); Stewart v. State, supra; 229 So.2d at 55.
Courts have by no means achieved unanimity in their views regarding the substantive contours of the right to effective assistance of counsel. See, e.g. Callahan v. State, supra, and Washington v. Strickland, 693 F.2d 1243 (5th Cir.1982). No matter. Our concern is with whether the issue was somehow waived by the defendants. Or, in the lingo of the day, are the Reads now and forever procedurally barred from raising the issue of ineffective assistance of counsel?
As a matter of practical necessity and juridical logic, the answer must be in the negative. The procedural bar rule has no application to the issue of ineffective assistance of counsel and the Court affirmatively so holds. We specifically hold in this case that the record fails to reflect affirmatively a denial of the right to effective assistance of counsel, that on all other issues tendered the appeal is not well taken and that the judgment below should be affirmed, but that this affirmance is without prejudice to the Reads' right via proper postconviction proceedings to litigate fully, if they wish to do so, their claim that at trial they were denied the effective assistance of counsel.[1]See Callahan v. State, supra.

*838 C.
The general rule in this Court, as in all appellate courts, is that no error not assigned may be urged as grounds for reversal. Miss.Sup.Ct. Rule 6(b). A corrollary rule is that, before an issue may be assigned and argued here, it must first have been presented to the trial court. Where the issue has not been timely presented below, it is deemed waived. The point is thus said to be procedurally barred when urged here.
This Court has never heretofore applied the procedural bar rule where a convicted defendant has on direct appeal urged ineffective assistance of counsel. This is true even though this Court has been considering the ineffective assistance of counsel issue for years, apparently without anyone suggesting that the point had to be procedurally preserved in the trial court. See Dobbs v. State, 200 Miss. 595, 606, 27 So.2d 551 (1946); Brooks v. State, 209 Miss. 150, 46 So.2d 94 (1950); Sims v. State, 209 Miss. 545, 549, 47 So.2d 849 (1950); Stewart v. State, 229 So.2d 53, 55-56 (Miss. 1969); Parham v. State, 229 So.2d 582, 583-584 (Miss. 1969); Miller v. State, 231 So.2d 178, 179 (Miss. 1970); Warren v. State, 369 So.2d 483, 486 (Miss. 1979); Buford v. State, 372 So.2d 254, 256-257 (Miss. 1979) and Hutchinson v. State, 391 So.2d 637, 639 (Miss. 1980). In most of these cases the claim of ineffective assistance of counsel was rejected on its merits. But because the issue in each case was treated on the merits, although occasionally cursorily, these cases necessarily stand for the proposition that no procedural bar rule has heretofore been applied.
In addition to the direct appeal cases cited above, we note that right to counsel claims have also been asserted via proper post-conviction proceedings, even though the point was not preserved at trial and was not raised on direct appeal. See Nelson v. Tullos, 323 So.2d 539, 543 (Miss. 1975); Berry v. State, 345 So.2d 613 (Miss. 1977).

D.
The right to the effective assistance of counsel, like any other constitutional right, may be waived. Matthews v. State, 394 So.2d 304, 309 (Miss. 1981). But before there can be a waiver, the defendant must be given a meaningful and realistic opportunity to assert the right. If he is given that opportunity and he intelligently and voluntarily declines to assert the right, it is then waived. But rights held waived absent reasonable opportunity for vindication as a matter of juridical logic cease to be rights.

1.

(a)
Consider the suggested procedural bar from the standpoint of practical reality. Lawyers, not defendants, make objections and preserve points for appeal. The very lawyer charged with ineffectiveness is the person in control of the timely presentation of issues to the trial court. In all likelihood this lawyer is the only person who has anything to do with the preserving for appeal errors at trial. It is totally unrealistic to expect that the lawyer charged with ineffectiveness will raise and preserve the issue in the trial court. Even if he raised the issue, it is absurd to fantasize that this lawyer might effectively or ethically litigate the issue of his own ineffectiveness. Assume new counsel for the defendant on appeal. Even the new attorney will not be in a position to raise the issue until after the point has been finally and forever waived.
The procedural bar rule urged here would place squarely on the individual defendant the burden of raising the issue of ineffective assistance of counsel. This generally unlettered layman, in midstream (or, perhaps more accurately, mid-trial) would have to charge with incompetence the only person standing between him and the penitentiary. Surely fairness demands that the defendant not be so whipsawed. Surely the defendant must be allowed, if not encouraged, *839 to stick with his lawyer, even though ineffective, hoping for the best until the bitter end.
And beyond that, the individual defendant, even if he summoned the temerity to claim that his lawyer was ineffective  and did so at the right time, whenever that might be, wouldn't have the foggiest idea how to litigate the merits of the issue.

(b)
Look at the timeliness problem. Is the defendant to be charged with objecting every time his lawyer "misses" an objection? Suppose defense counsel blunders to the point of incompetence in the cross-examination of the chief prosecuting witness? When  and how  is the defendant supposed to object in order to preserve the point? What of the case where defense counsel fails to present evidence on a defense the defendant doesn't even know he has? See Jones v. Thigpen, 555 F. Supp. 870 (S.D.Miss. 1983).

(c)
When litigated on its merits, the ineffectiveness issue is first and foremost a factual inquiry. But it is one conducted en gross. With one exception not important here,[2] the Court is concerned with the totality of the performance of defense counsel. True, each stick in the alleged bundle must be examined separately. These sticks may be pre-trial [Washington v. Strickland, supra, 693 F.2d at 1250-1258] or trial errors. Still, in the final analysis, it is the quantity and quality of the sticks collectively that is determinative.
If these sticks are potentially so numerous, and if they be found at such a variety of times  including times when the Court is not sitting, how could the issue ever be preserved by following the normal contemporaneous objection rule? Besides that, much of counsel's ineffectiveness will always be subject to cure. What lawyer caught in a time squeeze, and not having prepared for trial as thoroughly as he knows he should have, hasn't had the experience of finding that key witness the night before the case goes to the jury?
These questions lead to only one conclusion: the earliest sensible time to raise the ineffectiveness issue is after the jury has returned its verdict.

(d)
Look at the general procedural bar rule another way. In practically every context in which one might suggest that it apply, the issue is isolated to one moment in the trial and the defendant has in fact had a meaningful opportunity to present his claim to the trial court. Consider these varied contexts:
(a) a prospective juror is called who is subject to a challenge for cause;
(b) a confession obtained in violation of the accused's Fifth and Fourteenth Amendment rights is offered into evidence;
(c) a lay State witness offers hearsay evidence; or
(d) an erroneous jury instruction is requested by the State.
There are no doubt dozens of other contexts the experienced trial lawyer could readily call to mind. The point is that in each the issue is isolated from the rest of the trial and the accused has a meaningful opportunity to assert his right and obtain a hearing before the trial court. Practical reality being as it is, however, on the ineffective assistance of counsel issue, there is no meaningful opportunity to present the issue to the trial court. As a practical matter the State seeks to deny the defendant a bite of an apple he is constitutionally entitled to bite.

(e)
Finally, the nature of the claim is such that, on those rare occasions when it will be meritorious, see, e.g., Brooks v. State, supra, and Stewart v. State, supra, the defendant *840 will have been denied his fundamental right to a fair and impartial trial. Brooks v. State, supra, 209 Miss. at 154-155, 46 So.2d at 97. The denial of effective assistance of counsel is far less likely to be harmless error than almost any other denial of a right at trial that can be imagined. See Washington v. Strickland, supra, 693 F.2d at 1258-1262; and Callahan v. State, supra. In this light, adoption of a procedural bar rule is peculiarly inappropriate.

2.

(a)
Turning away from practical reality, consider the problem from the vantage point of judicial logic. What is really happening here is that the court is being asked to sacrifice a right in favor of something not a right at all, something less than a right. This the Court long ago pledged to refrain from doing  in this very context. In Brooks v. State, supra, Justice Lee reminded us that "Constitutional rights in serious criminal cases[3] rise above mere rules of procedure." 209 Miss. at 155, 46 So.2d at 97. We reiterate the fundamental premise underlying the Brooks admonition. Each person criminally accused has a right to the effective assistance of counsel. Federal and State constitutions vest this right in every Mississippian. Rights are customarily thought of as entitlements of an individual which he or she may claim no matter how inconvenient society or its members may deem it. These rights are vested, secured. Citizens may not be deprived of their important rights without due process of law, that is, without reasonable advance notice and a meaningful opportunity to be heard.[4] A defendant may be entitled to but one bite of the apple, but he is entitled to that one bite.
Rights, if they are rights, are compromised only when they come into conflict with other rights. Conversely, when rights are sacrificed to mere interests, by definition they cease to be rights. The right to effective assistance of counsel cannot by this or any other court be made less than a right. The positive constitutional law of the land, by virtue of the Supremacy Clause in the United States Constitution, Art. 6, cl. 2, so provides. This Court has never questioned its duty in matters of federal constitutional dimensions to enforce faithfully rights thus secured. See Bolton v. City of Greenville, 253 Miss. 656, 666, 178 So.2d 667, 672 (1965).
The procedural rule that no point may be urged on appeal which was not first presented to and passed upon by the trial court arises from no known right. Certainly the trial judge has no right, constitutional or otherwise, not to be put in error on a point not raised before him. The skin of trial judges is presumed as thick as that of the judges of this Court.

(b)
The State has a reasonable and legitimate interest (but not a "right") in assuring that, generally speaking, points presented on appeal first be presented to the trial court. The rationale supporting this interest may be stated variously. Requiring that issues be presented to the trial court will result in many being disposed of at that level with no appeals being necessary. Allowing trial judges a reasonable opportunity to correct trial errors short-circuits much trouble and expense. At the very least, counsel opposite is entitled to be put on notice that his adversary suspects error so that counsel may take corrective action before it is too late.
*841 The State has an interest in (but not a "right" to) judicial efficiency: the general notion that the trial court decides matters ab initio and the appellate court sits to review the correctness of those decisions on appeal. Beyond that, the State has an interest (but not a right) in avoiding the possibility that litigants and criminal defendants may sandbag  that they may see an error committed below and deliberately refuse to call it to the attention of the trial court or counsel opposite, hoping to build error and likely appellate reversal into the record. But "sandbagging" by definition assumes a meaningful opportunity to present the point to the trial court, coupled with a deliberate, cynical refusal to do so.

(c)
But as important as these interests described above may be, the State has another interest  here competing. Not only ought the State's legitimate interest in judicial efficiency in this context not override the accused's constitutional rights. See Brooks v. State, 209 Miss. at 155, 46 So.2d 97. That interest may be canceled out by another State interest. Equally as powerful as the State's efficiency interest is the idea that the defendant should at the trial level be given a realistic and meaningful opportunity in fact to assert and enjoy all rights secured to him by the Constitution and laws. Conversely, once it is seen that, with respect to a particular category of constitutionally-secured rights, there is no meaningful opportunity for indication at the trial court level, surely the State's interest in judicial efficiency manifest in its contemporaneous objection rule or its procedural bar is stalemated and loses its force.

E.
What then should be the procedure in this State? We have recently addressed the question of what the substantive standards should be. Callahan v. State, supra. Now, we will prescribe procedural rules to be followed hereafter:
(1) Any defendant convicted of a crime may raise the issue of ineffective assistance of counsel on direct appeal, even though the matter has not first been presented to the trial court. The Court should review the entire record on appeal. If, for example, from a review of the record, as in Brooks v. State, 209 Miss. 150, 46 So.2d 94 (1950) or Stewart v. State, 229 So.2d 53 (Miss. 1969), this Court can say that the defendant has been denied the effective assistance of counsel, the Court should also adjudge and reverse and remand for a new trial. See also State v. Douglas, 97 Idaho 878, 555 P.2d 1145, 1148 (1976).
(2) Assuming that the Court is unable to conclude from the record on appeal that defendant's trial counsel was constitutionally ineffective, the Court should then proceed to decide the other issues in the case. Should the case be reversed on other grounds, the ineffectiveness issue, of course, would become moot. On the other hand, if the Court should otherwise affirm, it should do so without prejudice to the defendant's right to raise the ineffective assistance of counsel issue via appropriate post-conviction proceedings. If the Court otherwise affirms, it may nevertheless reach the merits of the ineffectiveness issue where (a) as in paragraph (1) above, the record affirmatively shows ineffectiveness of constitutional dimensions, or (b) the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc. are not needed.
(3) If, after affirmance as in paragraph (2) above, the defendant wishes to do so, he may then file an appropriate post-conviction proceeding raising the ineffective assistance of counsel issue. See Berry v. State, 345 So.2d 613 (Miss. 1977); Callahan v. State, supra. Assuming that his application states a claim, prima facie, he will then be entitled to an evidentiary hearing on the merits of that issue in the Circuit Court of the county wherein he was originally convicted.[5] Once the issue has been formally *842 adjudicated by the Circuit Court, of course, the defendant will have the right to appeal to this Court as in other cases.
The above procedure is substantially in line with that utilized in Arkansas [Hilliard v. State, 259 Ark. 81, 531 S.W.2d 463, 465 (Ark. 1976)], California [People v. Pope, 23 Cal.3d 412, 152 Cal. Rptr. 732, 739-740, 590 P.2d 859, 866-867 (1979)], Idaho [State v. Douglas, 97 Idaho 878, 555 P.2d 1145, 1148 (1976)], and Louisiana [State v. Collins, 350 So.2d 590, 594 (La. 1977)].
This procedure has been designed to conform to constitutional imperatives while at the same time building as much judicial efficiency into the process as is feasible. For example, the reason why the Court should not automatically reserve the ineffective assistance of counsel issue for post-conviction proceedings in every case is based upon notions of judicial efficiency. If, as in Stewart v. State, supra, the Court can look at the record on direct appeal and conclude that trial counsel was constitutionally ineffective, what is the point in requiring a separate proceeding and a separate evidentiary hearing? Or, if counsel stipulate that the record on direct appeal is adequate, the Court should generally resolve the issue on its merits.
In all other cases, however, inasmuch as the ineffective assistance of counsel issue substantially raises issues of fact, an evidentiary hearing will be necessary.[6] There is no point in holding such a hearing, however, and going to all of that time, trouble, expense and agony, if the case is going to be reversed and remanded on other grounds. Where that occurs, any ineffectiveness of counsel will likely be mooted. Only in those cases where the Court cannot decide the ineffective assistance of counsel issue on the record presented on direct appeal and in those cases where the judgment of conviction is otherwise affirmed will it be necessary actually to hold evidentiary hearings.
Under the procedure outlined above, it should be noted that, absent extraordinary circumstances, the hearing on the ineffective assistance of counsel issue will occur while the defendant is incarcerated and is presumably serving his sentence.[7] The convicted defendant has been stripped of his presumption of innocence. Justice, accordingly, will not be delayed pending litigation of the ineffectiveness issue.
It needs to be reiterated that, like it or not, every convicted defendant has the absolute right to one meaningful opportunity to present his claim of ineffective assistance of counsel. Assuming he makes application in compliance with Rule 38, Miss.Sup.Ct. Rules [See Callahan v. State, supra], he is entitled to one opportunity for an evidentiary hearing on that issue.
AFFIRMED.
As to Part I: PATTERSON, C.J., WALKER and BROOM, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
As to Part II: PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS and PRATHER, JJ., concur.
DAN M. LEE, J., concurs in result only.
NOTES
[1] In this case counsel charged with ineffectiveness were retained, not appointed. For this reason, we note that, for purposes of the ineffectiveness issue, nothing turns on whether defense counsel was appointed or retained. Cuyler v. Sullivan, 446 U.S. 335, 344, 345, 100 S.Ct. 1708, 1716, 1717, 64 L.Ed.2d 333 (1980); Washington v. Watkins, 655 F.2d 1346 (5th Cir.1981), reh. den. 662 F.2d 1116 (5th Cir.1981), cert. den., 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982); Culberson v. State, 412 So.2d 1184 (Miss. 1982).
[2] In death penalty cases the Court must test and consider separately the effectiveness of counsel at the guilt phase and at the sentencing phase. Gardner v. Florida, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393, 402 (1977); Voyles v. Watkins, 489 F. Supp. 901, 912 (N.D. Miss. 1980); Jones v. Thigpen, supra.
[3] In Brooks the defendant had been sentenced to five years in the penitentiary. In the case at bar, John Read has been awarded a sentence of fifteen years plus a $15,000.00 fine, while Cathy Read has received a ten-year, $5,000.00 sentence. If Brooks qualifies as a "serious criminal case," surely this one does.
[4] It is hornbook constitutional law that, before an individual may be deprived of any important right, he must be given (a) reasonable advance notice of a hearing at which (b) he is afforded a meaningful opportunity to assert the right. See, e.g., Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).
[5] Note the analogous course of proceedings on application for federal habeas corpus relief under 28 U.S.C. § 2254. Gray v. Lucas, 685 F.2d 139 (5th Cir.1982); Bell v. Watkins, 692 F.2d 999 (5th Cir.1982); Voyles v. Watkins, supra. Suffice it to say that, where the state court denies the defendant a full and fair factual hearing on his or her claim of ineffective assistance of counsel, the federal court invariably grants one.
[6] We note that a petitioner desiring such a hearing must tender two tickets at the door: (a) a pleading complying with Rule 38, Miss. Sup.Ct.Rules, and (b) a pleading stating facts which, if proved, would entitle petitioner to relief.
[7] For a consideration of the question of whether, and under what circumstances, release on bail is available to a finally convicted state prisoner pending his application for post-conviction relief, see Annot., Court's Power and Duty, Pending Determination of Habeas Corpus Proceedings on Merits, to Admit Petitioner to Bail, 56 A.L.R.2d 668 (1957) and cases in A.L.R.2d later case service.