BRIDGES, P.J.,
for the Court.
¶ 1. Leonard E. Gray was convicted of destruction of telephone lines in the Circuit Court of Rankin County and, consequently, ordered to serve a sentence of ten years in the custody of the Mississippi Department of Corrections and to pay more than $14,000 in various fees, fines, and restitution. Gray’s trial counsel subsequently filed with the court a motion for judgment not withstanding the verdict or, in the alternative, a new trial, but the motion was denied.
¶ 2. Aggrieved by the denial, Gray appealed and now comes before this Court presenting the following three assignments of error for our review:
I. DID THE CIRCUIT COURT ERR IN ALLOWING AN IN-COURT IDENTIFICATION OF GRAY DUE TO AN IMPERMISSIBLY SUGGESTIVE PRETRIAL IDENTIFICATION?
II. DID THE CIRCUIT COURT ERR IN REFUSING TO SUPPRESS ANY AND ALL EVIDENCE CONCERNING GRAY’S VEHICLE?
III. WAS THE PERFORMANCE OF GRAY’S TRIAL COUNSEL DEFICIENT SO AS TO CONSTITUTE INEFFECTIVE ASSISTANCE?
¶ 3. Finding that each of said issues lacks merit, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 4. Walter L. Wallace testified that on April 29, 2002, he drove across Highway 471 onto Vine Street, in Rankin County, Mississippi, where he saw a black male parked in an older model, blue Volvo. Wallace claimed that he was about thirty feet away from the car as he drove by at a rate of approximately five to ten miles per hour. Wallace stated that, after going by the car, he turned around and proceeded back down Vine Street when he saw the individual, from approximately 150 feet away, retrieve “an ax or a kaiser blade” from the trunk of the Volvo and then repeatedly strike a nearby telephone pole.[1] Afterwards, the man returned the tool to the trunk and drove away. Finding the behavior suspicious, Wallace followed the man and watched, from approximately 500 feet away, as he repeated the act. Wallace subsequently called 911 and reported the activity.
¶ 5. Officer Doug Holloway of the Rankin County Sheriffs Department subsequently "contacted Mike Lynchard, a representative of BellSouth, to relay the details of Wallace’s report. Lynchard testified that he suspected, based on his conversation with Officer Holloway, that the individual was Leonard Earl Gray, explaining that Gray had committed similar acts in the past.' Officer Holloway subsequently collected photographs of Gray from the Jackson Police Department and arranged for Wallace to view them. After Wallace positively identified Gray as the individual he observed striking tbe telephone poles on April 29, 2002, an arrest warrant for Gray was issued and his identity, along with other' pertinent information, was entered in the National Crime Information Center.
*1036 ¶ 6. On May 11, 2002, Gray was arrested in Sylacauga, Alabama. Officer Holloway received word of Gray’s arrest two days later and was also informed at that time that a blue, 1986 Volvo had been seized. Gray was subsequently transported back to Rankin County, Mississippi, where he was detained. Gray refused to consent to a search of his car, so the Volvo was retrieved from Alabama and then towed back to Mississippi. Upon its return, Officer Holloway filed for and was issued a warrant to search the Volvo, and in conducting a search thereof, the officers found an ax and a sledgehammer in the trunk. A grand jury subsequently indicted Gray for “willfully, unlawfully, knowingly and feloniously destroying], tampering] or interfering] with telephone lines, the property of BellSouth, without the consent of BellSouth and with the belief that such act would hinder, delay, or interfere with the operation of the telephone system, in violation of Mississippi Code Annotated § 97-7-31 (1972), as amended.... ”
¶ 7. On February 11, 2003, Gray filed a motion to suppress any in-court identification of him as well as any evidence concerning the Volvo. The court, however, ordered only to suppress the mug shots from which Wallace first identified Gray.
¶ 8. On March 10, 2004, Gray was convicted of destruction of telephone lines in the Circuit Court of Rankin County. The court subsequently sentenced Gray to serve a term of ten years in the custody of the Mississippi Department of Corrections and ordered him to pay (a) $451 in court costs, fees, and assessments; (b) $10,000, with $5,000 suspended, in fines; and (c) $8,651.32 in restitution to BellSouth. Gray then filed a motion for judgment not withstanding the verdict or, in the alternative, a new trial, but the motion was denied. Aggrieved thereby, Gray effectuated this appeal.
LAW AND ANALYSIS
I. IN-COURT IDENTIFICATION
¶ 9. Gray maintains that Wallace’s in-court identification of him is unreliable because Wallace did so only after Officer Holloway showed him mug shots that were subsequently suppressed by the court. When testifying, Wallace indicated that he could only identify Gray based on his initial observation from April 29, 2002, in addition to the mug shots he viewed a few days later. Gray accordingly concludes that the lower court erred by allowing Wallace to identify him in court since the identification resulted from impermissibly suggestive pretrial identification.
¶ 10. When an in-court identification of a defendant has been allegedly tainted by an improperly suggestive pretrial identification, we must review the matter in accordance with the factors enunciated in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Accordingly, we must determine whether the in-court identification is “sufficiently reliable to overcome the taint of the prior improperly attained identification.” Gayten v. State, 595 So.2d 409, 418 (Miss.1992). The factors outlined in Biggers include: (1) the opportunity of the witness to view the accused at the time of the crime; (2) the degree of attention exhibited by the witness; (3) the accuracy of the witness’s prior description of the criminal; (4) the level of certainty exhibited by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Biggers, 409 U.S. at 199, 93 S.Ct. 375; Fleming v. State, 604 So.2d 280, 302 (Miss.1992). An in-court identification is deemed admissible if, under the totality of the circumstances, the court finds sufficient indicia of reliability. Fleming, 604 So.2d at 301.
*1037 ¶ 11. In applying the Biggers factors to. the evidence in the record, we note that Wallace looked at Gray for approximately ten seconds, from about thirty feet away, when he first passed by him sitting in his blue Volvo. Wallace continued watching him, although from greater distances, and witnessed Gray’s efforts to destroy certain property belonging to the phone company. In calling 911, Wallace described the perpetrator as a black male driving an old, blue, beat-up Volvo. Wallace elaborated at trial, estimating that the perpetrator was in his late thirties or early forties, had a medium build, ranged around 160 to 170 pounds, and was roughly five feet and nine to ten inches tall. When Gray was arrested in Alabama, the police seized a blue, 1986 Volvo, which he admitted to owning once in custody. From the subsequent search of the Volvo, the officers recovered both an ax and a sledgehammer from the trunk.
¶ 12. Despite the overall accuracy of Wallace’s descriptions, Gray attacks them as vague generalizations that purportedly lack sufficient detail and specificity from which to find the later in-court identification reliable; however, Gray offers no evidence in rebuttal to Wallace’s descriptions. After weighing the Biggers factors against any potential prejudice resulting from the allegedly suggestive identification, we find no substantial likelihood of irreparable misidentifieation and, accordingly, find this issue to lack merit.
II. CHAIN OF CUSTODY
¶ 13. Gray maintains that the lower court erred in refusing to suppress all evidence concerning the blue Volvo, including the identification thereof. Gray claims that the State failed to establish a proper chain of custody, thereby accounting for the Volvo from the moment it was seized in Alabama, continuing through when the police conducted a search of it back in Mississippi, and then concluding with Wallace’s identification of it. Gray further claims that the State failed to show that the Volvo identified by Wallace was in substantially the same condition as when first impounded in Alabama, and that, in the absence of such showing, no testimony should have been allowed identifying the Volvo as that driven by the perpetrator on April 29. Gray concludes that an improper chain of custody renders any evidence obtained in connection with the car inadmissible.
¶ 14. The trial court is vested with the discretion to determine whether the State established the chain of custody of evidence, and this Court must not reverse the trial court in this regard absent finding an abuse of discretion prejudicial to the defendant. Morris v. State, 436 So.2d 1381, 1388 (Miss.1983). The burden of proving a break in the chain of evidence lies with the defendant, and the test for whether the State has made such showing is whether there is any reasonable inference or indication of likely tampering with or substitution of evidence. Brooks v. State, 761 So.2d 944, 948(¶ 18) (Miss.Ct.App.2000).
¶ 15. Gray attacks the chain of custody without the benefit of any evidence showing a break therein; he merely supports his argument with unsubstantiated statements of fact. A break in the chain of custody does not render evidence inadmissible unless reasons exist to believe that the evidence was tampered with or contaminated. Id. at (¶ 21). Moreover, the State is not required to produce for trial every person who handled the evidence, nor to account for the evidence every minute of every day. Butler v. State, 592 So.2d 983, 985 (Miss.1991). Gray provides nothing to support a claim of alleged improprieties regarding the evi *1038 dence presented against him, so he unquestionably failed to meet his burden of proof as to this issue. Accordingly, we find this issue meritless.
III. INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 16. On May 12, 2004, a few months after Gray’s conviction, the lower court appointed Gray new legal representation for the purpose of effectuating this appeal, and on appeal, said attorney contends that Gray received ineffective assistance of counsel at trial. This issue was not addressed at the trial level; however, such claims are permitted on direct appeal under certain circumstances. See Read v. State, 430 So.2d 832, 841 (Miss.1983).
¶ 17. Gray maintains in his brief that his trial counsel failed to verify facts critical to his defense and that, as a result, said representation failed to meet the requisite standard of minimal competence. Specifically, Gray avers that he could not have been in Rankin County, Mississippi, on the morning of April 29, 2002, because he was in Birmingham, Alabama, which could have been verified by contacting the hotel where he stayed. Gray also claims that the ax found in his car was purchased after the subject crime occurred, which could have been verified by the receipt he received at the time of purchase. Gray concludes that his defense was prejudiced by said deficiencies in his counsel’s performance, which establishes ineffective assistance.
¶ 18. A claim of ineffective assistance of counsel may be properly raised on direct appeal only when (a) the record affirmatively shows ineffectiveness of constitutional dimensions, or (b) the appellate court can make such finding based on its review of the record alone, thus to the exclusion of the trial court’s findings of fact. Id. at 841-42. If, when fully considering allegations of ineffective assistance of counsel, the appellate court is required to inquire into matters outside of the record, direct appeal is not the proper procedural vehicle to adequately resolve such claim because the appellate court, among other considerations, is not in the position to undertake the necessary fact-finding. See Colenburg v. State, 735 So.2d 1099, 1102(¶ 6) (Miss.Ct.App.1999). Therefore, where a claim of ineffective assistance of counsel is raised on direct appeal but the disposition thereof is dependant upon additional fact-finding, the appellate court must deny relief without prejudice, thereby permitting the defendant to raise said issue anew in a post-conviction relief proceeding, where appropriate circumstances authorize the trial court to conduct a full evidentiary hearing. See Miss.Code Ann. § 99-39-19 (Rev.2000); Read, 430 So.2d at 837.
¶ 19. We are convinced that the record herein is inadequate, in and of itself, to establish a claim of ineffective assistance of counsel, for Gray’s argument is founded on nothing more than mere assertions of unsubstantiated fact. This Court “must decide each case by the facts shown in the record, not assertions in the brief, ... [and f]acts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them.” Mason v. State, 440 So.2d 318, 319 (Miss.1983) (citations omitted). “This Court does, not act upon innuendo and unsupported representations of fact by defense counsel.” Gerrard v. State, 619 So.2d 212, 219 (Miss.1993). An examination of said assertions and an analysis thereof would necessitate a full evidentiary inquiry, which can only be accomplished through a petition for post-conviction relief.
¶ 20. Accordingly, we decline to consider Gray’s allegations of ineffective assis *1039 tance of counsel advanced herein on direct appeal. We do so, however, without prejudice as to Gray’s right to advance said issue in a subsequent post-conviction relief proceeding.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION OF DESTRUCTION OF TELEPHONE LINES AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND ORDER TO MAKE FULL RESTITUTION TO BELLSOUTH AND FINE OF $5,000.00 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
KING, C.J., LEE, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.

. Wallace testified that Gray struck the telephone pole with "an ax or a kaiser blade;” however, Wallace originally reported to the 911 operator that Gray used a sledgehammer.