972 So.2d 31 (2008)
James BROWNLEE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01399-COA.
Court of Appeals of Mississippi.
January 8, 2008.
*33 Richard B. Lewis, Clarksdale, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before LEE, P.J., IRVING and ROBERTS, JJ.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. On July 25, 2006, a jury sitting before the Coahoma County Circuit Court found James Brownlee guilty of two counts of armed robbery. The jury did not recommend a life sentence. Accordingly, the circuit court sentenced Brownlee to two concurrent sentences of fifteen years with eight years suspended and seven years to serve. Following unsuccessful posttrial motions for JNOV and a new trial, Brownlee now appeals. Finding no error, we affirm.

FACTS
¶ 2. Brownlee's conviction is the result of events that transpired at the Isle of Capri Casino in Coahoma County, Mississippi on March 2, 2006. Twenty-two-year-old Jesse Green had $4,400 in income tax return proceeds and he was interested in buying a car. His brother, Eric, told him about a black Camaro Z28 that was for sale and gave him a contact number. Green spoke to a man named Ricky in Arkansas. They arranged to meet in the parking lot of the Isle of Capri Casino.
¶ 3. Green, his brother Jerryco, and Roger Leslie drove to the parking lot and waited for the black Camaro. When it did not appear, Jerryco went inside the casino to telephone Ricky. While Jerryco was inside the casino, a white Cadillac pulled up behind Green's red truck. By Green's description, one man suddenly appeared at his window and another man appeared at the driver's side window where Leslie was sitting. Both men were armed with pistols. One robber took $400 from Green's pocket, and then he "kind of butted" Green in the head with the pistol and said, "That's not all you got. You don't think I'll kill you?" He took the remaining $4,000. As one armed man attempted to flee the scene, the other armed man demanded that Leslie give him the keys to Green's truck. Once they retrieved the keys, ensuring they could not be followed, the robbers sped away from the casino against the flow of traffic and headed toward Arkansas. Several other individuals testified that they witnessed a white Cadillac speeding out of the casino parking lot heading toward Arkansas. Following the robbery, Green and Leslie reported the incident to a casino security officer who contacted the police.
¶ 4. When Coahoma County Investigator Fernando Bee arrived at the casino he interviewed Green and Leslie, and the two victims gave Bee descriptions of the robbers and of the white four-door Cadillac they were driving. They also gave Bee a partial license plate number of the vehicle; however, he was unable to match the number. The individual who robbed Green was described as having a stocky build, a dark complexion, braids or dreads, a partial gold tooth, and, according to Green, a chubby face. A day or two after the robbery, Bee received a call from Chief Deputy David Lawman in Phillips County, Arkansas. Bee met with Lawman in Arkansas and obtained photos of possible suspects, one of which was Brownlee. After returning to Mississippi, Bee developed a photo lineup consisting of photos of Brownlee and five other individuals. The following day Green came to the station to view the lineup and identified Brownlee as the person who robbed him. The next day, Leslie viewed the same lineup and also identified Brownlee as the robber. Green and Leslie then *34 signed affidavits against Brownlee and he was arrested in Arkansas soon after. However, Bee never discovered the white Cadillac, the gun used in the robbery, or any removable gold teeth.
¶ 5. At trial, Brownlee took the stand in his defense. He unequivocally stated that he did not rob Green or anyone else. He claimed he was helping his paraplegic nephew at a gym in Helena, Arkansas when the robbery occurred. He testified that his family owned a white Cadillac which he drove, but claimed the white Cadillac on the surveillance video was not his because his car had dark tinted windows and a dent on the left side and the car in the video did not.

PROCEDURAL HISTORY
¶ 6. The Coahoma County grand jury returned an indictment against Brownlee on May 30, 2006. Brownlee pleaded not guilty, and a two-day trial began on July 24, 2006. The jury found Brownlee guilty of both counts of armed robbery, but was not able to fix a penalty. After a sentencing hearing on August 14, 2006, the circuit court sentenced Brownlee to two concurrent fifteen-year sentences with seven years to serve and eight years suspended. Posttrial, Brownlee filed unsuccessful motions for JNOV and, alternatively, for a new trial. Aggrieved, Brownlee appeals and raises the following issues:
I. WHETHER THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR DIRECTED VERDICT AND MOTION FOR JNOV.
II. WHETHER APPELLANT'S COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL.
Finding no error, we affirm.

ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR DIRECTED VERDICT AND MOTION FOR JNOV, OR IN THE ALTERNATIVE, A MOTION FOR NEW TRIAL.
¶ 7. The standard of review we must employ upon our review of a denial of a motion for directed verdict or motion for JNOV has been aptly stated as such:
We must, with respect to each element of the offense, consider all of the evidence  not just the evidence which supports the case for the prosecution  in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Le v. State, 913 So.2d 913 (¶ 163) (Miss. 2005) (quoting Wetz v. State, 503 So.2d 803, 807 (Miss.1987)). Such is a high standard for any defendant to overcome, and one which Brownlee fails to do so here.
¶ 8. Brownlee was tried and convicted by a jury on two counts of violating Mississippi Code Annotated section 97-3-79 (Rev. 2006) which states:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his *35 person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.
¶ 9. The testimony and evidence before the jury, as laid out above, shows that two witnesses identified Brownlee out of court from a photo array and also made in-court identifications of Brownlee as the culprit who robbed Green at gunpoint of $4,400. As to this, Brownlee argues that the photo lineup was "impermissibly suggestive" because he was the only individual who had dread locks and cites Dennis v. State, 904 So.2d 1134 (Miss.App.2004) in support. In Dennis, the defendant made a similar argument and indicated that the suggestive nature of the lineup stemmed from the facts that his picture was a driver's license picture while the others were pictures of inmates and that his image was larger than the others. Dennis, 904 So.2d at (¶ 9). The supreme court conceded the differences identified by Dennis, but found the issue "absolutely devoid of any merit." Id. at (¶ 13). In so doing, the court pointed out that each picture had the same format and the men pictured had the same complexion. Id. at (¶ 12).
¶ 10. An in-court identification by an eyewitness will not be thwarted by an impermissibly suggestive pre-trial identification unless under the totality of circumstances "the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Houston v. State, 887 So.2d 808 (¶ 17) (Miss.Ct.App.2004) (quoting Nicholson v. State, 523 So.2d 68, 72 (Miss.1988)). Therefore, we must determine if Greens's and Leslie's photo identifications of Brownlee carried a likelihood of irreparable misidentification. In so doing, we must apply the factors expounded in Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401,(1972), listed as follows: (1) the opportunity of the witness to view the accused at the time of the crime, (2) the degree of attention exhibited by the witness, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty exhibited by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.
¶ 11. The photo lineup in the case sub judice was a grouping of six pictures of men. As in Dennis, they were of the same complexion, appeared to be of the same age group, and the size of the image of each man was roughly equivalent. While Brownlee is the only individual in the lineup with dread locks, other individuals could reasonably be said to have the same or similar hairstyle, especially given the less than stellar detail of the photos in the array. Additionally, Green was able to view his robber's face for a full four minutes. He testified that Brownlee exited a white Cadillac and, all of a sudden, was in his window with a gun. He identified Brownlee exactly as he did to the police. Namely, he described Brownlee as having braids and a chubby face. When asked if he would ever forget Brownlee's face, Green responded, "No, sir, never will." Green was shown the lineup approximately two weeks after the robbery and Bee testified that when Green identified Brownlee from the photo lineup his only hesitation stemmed not from uncertainty that Brownlee was the robber, but from his confusion of the numbers used in the photo indicating height. As such, Brownlee's claim that *36 Green's pre-trial identification was somehow tainted is without merit.
¶ 12. As to Leslie's out-of-court identification, we reach the same conclusion. Leslie testified that he observed Brownlee rob Green and gave a description to Bee that the robber was slim with "dreads", and he identified Brownlee in the photo lineup the day after Green. Based upon the record before us, we cannot say Leslie's identification of Brownlee from the photo lineup "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." "Short of finding that under all the circumstances, there is a very substantial likelihood of irreparable misidentification from the identification of an accused made under suggestive and unnecessary police identification procedures, evidence of such an identification is for the jury to weigh." McNeal v. State, 405 So.2d 90, 93 (Miss. 1981).
¶ 13. The jury heard the testimony of Green and Leslie. Specifically, they testified that Brownlee was the individual that robbed Green of $4,400. There was testimony that the robber had a partial gold tooth and neither Green nor Leslie recalled the Cadillac having tinted windows. However, the jury heard testimony of the cosmetic appeal of removable gold teeth and Brownlee's claim that his Cadillac had dark tinted windows.
The jury is charged with the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed. The jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory, and sincerity. It is not for this Court to pass upon the credibility of witnesses and where evidence justifies the verdict it must be accepted as having been found worthy of belief.
Houston v. State, 887 So.2d 808, 816(¶ 38) (Miss.Ct.App.2004) (quoting Smith v. State, 821 So.2d 908(¶ 4) (Miss.Ct.App. 2002)). In the case sub judice, the jury was instructed in accordance with the Biggers factors enumerated above, and after hearing the testimony of all witnesses and Brownlee himself, found him guilty. Viewing all evidence in a light most favorable to the verdict, we cannot say that given such evidence "reasonable and fair-minded jurors could only find the accused not guilty." We find Brownlee's argument without merit.
¶ 14. Turning our focus to the trial court's denial of Brownlee's motion for new trial, we are concerned with the weight of the evidence rather than its sufficiency. When reviewing the weight of the evidence the following standard must be utilized:
A motion for a new trial is addressed to the sound discretion of the trial judge who may grant a new trial if he deems such is required in the interest of justice or [if] the verdict is contrary to law or the weight of the evidence. The trial judge should not order a new trial unless he is convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice.
In reviewing this claim, this Court must accept as true the evidence favorable to the State. This Court will reverse only when it is convinced that the trial judge has abused his discretion. Further, where there is conflicting testimony, the jury is the judge of the credibility of the witnesses.
(quoting Wetz, 503 So.2d at 812). In reviewing the evidence laid out above, we are convinced the trial judge did not abuse his *37 discretion in denying Brownlee's motion for new trial. As such, this issue is without merit.
II. WHETHER APPELLANT'S COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL.
¶ 15. Brownlee next claims that his trial counsel provided ineffective assistance. Specifically, he claims his counsel was ineffective by failing to investigate, determine, and call alibi witnesses who could place Brownlee at Champ's Health and Fitness Club in West Helena, Arkansas at the time of the robbery. Further, Brownlee argues his counsel's failure to file a motion to suppress the photo lineup was constitutionally ineffective assistance of counsel. In support, Brownlee points to affidavits from four individuals that indicate Brownlee was at the fitness club between 3:30 p.m. and 5:30 p.m. the day of the robbery.
¶ 16. As noted by Brownlee and the State, an ineffective assistance of counsel claim raised on direct appeal should not be ruled upon by the reviewing court unless the court can say "the record affirmatively shows ineffectiveness of constitutional dimensions." Read v. State, 430 So.2d 832, 841 (Miss.1983). The Read court explained the proper procedural rules a reviewing court must follow when presented with an ineffective assistance of counsel claim on direct appeal as follows:
(1) Any defendant convicted of a crime may raise the issue of ineffective assistance of counsel on direct appeal, even though the matter has not first been presented to the trial court. The Court should review the entire record on appeal. If, for example, from a review of the record . . . this Court can say that the defendant has been denied the effective assistance of counsel, the Court should also adjudge and reverse and remand for a new trial.
(2) Assuming that the Court is unable to conclude from the record on appeal that defendant's trial counsel was constitutionally ineffective, the Court should then proceed to decide the other issues in the case. Should the case be reversed on other grounds, the ineffectiveness issue, of course, would become moot. On the other hand, if the Court should otherwise affirm, it should do so without prejudice to the defendant's right to raise the ineffective assistance of counsel issue via appropriate post-conviction proceedings. If the Court otherwise affirms, it may nevertheless reach the merits of the ineffectiveness issue where (a) as in paragraph (1) above, the record affirmatively shows ineffectiveness of constitutional dimensions, or (b) the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge [who was] able to consider the demeanor of witnesses, etc. are not needed.
(3) If, after affirmance as in paragraph (2) above, the defendant wishes to do so, he may then file an appropriate post-conviction proceeding raising the ineffective assistance of counsel issue. Assuming that his application states a claim, prima facie, he will then be entitled to an evidentiary hearing on the merits of that issue in the Circuit Court of the county wherein he was originally convicted. Once the issue has been formally adjudicated by the Circuit Court, of course, the defendant will have the right to appeal to this Court as in other cases.
Read, 430 So.2d at 841-42 (internal citations omitted).
¶ 17. As we are affirming the lower court's rulings brought into question by Brownlee, we may only reach the merits of his ineffective assistance of counsel claim if the parties stipulate the record is adequate, or we are satisfied the record affirmatively shows ineffectiveness of constitutional *38 dimensions. Neither condition is satisfied. The parties have made no such stipulation and we cannot say that the record before us is sufficient, without more, to establish ineffective assistance of counsel. As such, Brownlee's claim of ineffective assistance of counsel will not be addressed and it is dismissed without prejudice so as to preserve his right to renew such a claim on post-conviction collateral relief if he so chooses.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF COUNT I, ARMED ROBBERY AND SENTENCE OF FIFTEEN YEARS WITH EIGHT YEARS SUSPENDED, AND COUNT II, ARMED ROBBERY AND SENTENCE OF FIFTEEN YEARS WITH EIGHT YEARS SUSPENDED, WITH SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.