911 So.2d 644 (2005)
Rommel A. AMOS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01920-COA.
Court of Appeals of Mississippi.
September 20, 2005.
*647 Lydia Roberta Blackmon, attorney for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
Before LEE, PJ, IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. After a trial in the Circuit Court of Holmes County, Rommel Amos was found guilty of murder and sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. Amos appeals, arguing that: (1) his right to a speedy trial was violated; (2) jury misconduct deprived him of a fair and impartial jury; (3) the prosecution offered perjured testimony and withheld exculpatory evidence in violation of the Brady rule; (4) the State failed to disclose an agreement with one of its witnesses; (5) the identification of Amos was unnecessarily suggestive; (6) the trial court erroneously excluded certain hearsay testimony; (7) the prosecutor made improper statements during cross-examination; (8) the evidence was insufficient to support the verdict; (9) the verdict was against the overwhelming weight of the evidence; (10) Amos received ineffective assistance of counsel; and (11) the cumulative effect of all the errors requires a new trial.
*648 ¶ 2. We find no error and, therefore, affirm Amos's conviction and sentence.

FACTS
¶ 3. Amos was convicted of the shooting death of Walter "Junior Man" Vance. At the trial, it was established that, on October 31, 2001, Amos visited Aaron Hudson and his girlfriend, Alexis Noel, at their home in Tchula, Mississippi. Amos, a native of Illinois, had been a resident of Holmes County for the past two or three months and lived with his girlfriend, LaMonica Henderson. Henderson drove a black Chevrolet Impala car.
¶ 4. That evening, Amos and Hudson decided to visit an acquaintance who lived in a nearby trailer park. They walked from Hudson's trailer through the trailer park. Since it was Halloween night, large numbers of people were outside. Amos and Hudson encountered a small group who were standing around talking, including both Vance and Christopher "Molly" Claiborne. Amos and Vance exchanged cross words. According to witnesses for the State, Amos became angry after Vance joked that Amos's head covering looked as if he had panties on his head. Amos and Vance began shoving each other. Vance pushed Amos down but then helped him back up. Vance and Claiborne walked away, and Amos walked back toward Hudson's trailer. Then, Amos ran up to Vance and Claiborne with a gun and started shooting at their backs. Vance fell to his knees, and Amos walked over to him and shot him several times, stating, "Die, b____, die." Then, he ran back to Hudson's trailer.
¶ 5. According to Amos, when he and Hudson encountered the group, Vance and others harassed him about being a stranger to Tchula. Vance displayed a .22 caliber revolver and stated, "get your b____ ass down here." Frightened, Amos walked in the direction of Hudson's trailer. Then, three men, including Vance and Claiborne, approached him and began hitting and kicking him, forcing him to the ground. As he lay curled up in an effort to avoid their blows, he heard someone say, "go get the gauge," meaning a gun. Then, Hudson ran up and gave Amos a gun. In fear for his life, Amos started shooting randomly and then ran to Hudson's trailer. Amos returned the gun to Hudson and walked to his own home several miles away. The next day, he traveled to Chicago, Illinois. Amos explained that he had fled out of fear for his life and that, four days later, he discovered someone had been killed that night. Later, authorities apprehended Amos in Chicago and extradited him to Holmes County.
¶ 6. Dr. Steven Hayne, who conducted the autopsy, testified that Vance sustained four gunshot wounds, all of which entered the rear of his body and traveled forward. Two of the wounds were to the head, including the lethal wound, which entered over the left ear and exited through the left eye. Dr. Hayne recovered one .22 caliber projectile from a wound to Vance's back and testified that Vance's other wounds were consistent with .22 caliber projectiles. At the crime scene, police found five .22 caliber shells located two to four feet from a blood patch on the ground. Police also found a .22 caliber semi-automatic handgun wrapped in a shirt hidden underneath an abandoned house next door to Hudson's trailer. A forensic examiner with the Mississippi Crime Laboratory determined that the five shells had been released when the .22 caliber handgun was fired. The jury rejected Amos's defense of self-defense and found him guilty of murder.

I. WHETHER AMOS'S CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL WAS VIOLATED.
¶ 7. Amos was indicted on July 16, 2002 and arrested in Mississippi on July *649 26, 2002. On July 29, 2002, he filed a pro se motion for a speedy trial. At Amos's arraignment on August 28, 2002, he appeared with appointed counsel and trial was set for February 13, 2003. Amos's trial did not begin until May 1, 2003. On appeal, Amos argues that the timing of the trial violated his statutory and constitutional speedy trial rights.
¶ 8. Mississippi Code Annotated section 99-17-1 (Rev.2000) establishes the statutory right to a speedy trial and provides that the accused must be tried within 270 days of the arraignment unless good cause is shown and a continuance granted by the court. Though Amos argues that his statutory right to a speedy trial was violated, he acknowledges the fact that he was tried 255 days after his arraignment. Since Amos was tried within 270 days of his arraignment, his statutory right to a speedy trial was not violated. Miss.Code Ann. § 99-17-1 (Rev.2000).
¶ 9. This Court applies the balancing test from Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) to determine constitutional speedy trial violations. Barker requires the examination of four factors: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant has asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay. Birkley v. State, 750 So.2d 1245, 1249 (¶ 11) (Miss.1999). If the length of the delay is over eight months, the delay is presumptively prejudicial and triggers the balancing of the other three factors. Adams v. State, 583 So.2d 165, 168 (Miss.1991). Once the delay is found to be presumptively prejudicial, "the burden shifts to the prosecution to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of these reasons." State v. Ferguson, 576 So.2d 1252, 1254 (Miss.1991). However, the delay factor alone is insufficient for reversal. Young v. State, 891 So.2d 813, 817(¶ 5) (Miss.2005).
¶ 10. The constitutional speedy trial right attaches at the time a person is effectively accused of a crime, whether at arrest, indictment, or information. Smith v. State, 550 So.2d 406, 408 (Miss.1989). In his appellate brief, Amos contends that the speedy trial right attached when he was apprehended in Chicago, Illinois in December 2001.[1] This contention is incorrect. The State of Mississippi lacked jurisdiction over Amos until his extradition. Price v. State, 898 So.2d 641(¶ 13) (Miss.2005). Thus, the speedy trial time could not have begun to run until the State obtained jurisdiction over Amos. Id. The record is silent as to the date when Amos was extradited to Mississippi. Amos was indicted on July 16, 2002 and subsequently arrested by the Holmes County Sheriff's Department. It appears that Amos's indictment was the event at which the State effectively accused Amos of the crime and, therefore, Amos's right to a speedy trial attached on July 16, 2002.

1. Length of the delay
¶ 11. Over nine months elapsed from the date of Amos's indictment on July 16, 2002 to the trial on May 1, 2003. This delay of over eight months was presumptively prejudicial and requires our examination of the other three Barker factors.

2. Reason for the delay and assertion of the speedy trial right
¶ 12. Absolutely no reason for the delay appears in the record; there is no indication that either Amos or the State requested a continuance or otherwise caused the delay. Amos filed a pro se motion for a speedy trial shortly after his arrest, but he *650 never brought the motion to the attention of the trial court to obtain a ruling. Nor did Amos pursue the speedy trial issue by raising it in his motion for a J.N.O.V. or a new trial. Since Amos failed to obtain a ruling from the trial court on the speedy trial issue, this Court lacks any findings on the record as to the reason for the delay or any response from the State as to the cause of the delay. See Young, 891 So.2d at 818(¶ 12).

3. Prejudice
¶ 13. Three interests protected by the speedy trial right must be considered in determining whether the defendant has been prejudiced by a delay in bringing him to trial. Id. at (¶ 14). These interests are: "(1) the interest in preventing oppressive pre-trial incarceration; (2) the interest in minimizing anxiety and concern of the accused; and (3) the interest in limiting the possibility the defense will be impaired." Id. The interest in preventing the impairment of the defense is the most important interest and the one most prejudicial to the defendant when violated. Id.
¶ 14. Amos contends that he suffered prejudice in the form of oppressive pre-trial incarceration, which caused him anxiety. But, pre-trial incarceration, alone, is not considered prejudicial. Jefferson v. State, 818 So.2d 1099, 1108(¶ 22) (Miss.2002). Amos contends that his pre-trial incarceration was oppressive because, for two weeks after his extradition to Mississippi, he was not allowed to make any telephone calls to notify his family of his whereabouts. Since Amos never brought his speedy trial request to the attention of the trial court, no evidence of the conditions of his pre-trial incarceration are contained in the appellate record. "Facts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them." Mason v. State, 440 So.2d 318, 319 (Miss.1983).
¶ 15. Amos also claims that evidence helpful to his defense was diminished by the pre-trial delay. He asserts that the memories of defense witnesses had faded, diminishing the credibility of their testimony. He avers that the area where the crime occurred had changed over time, and, therefore, the jury had an inaccurate perception of the crime scene. At the trial, Amos showed the jury a scar on his head which he said was the result of having been beaten by Vance and Claiborne. He asserts that this scar had faded as he awaited trial and, thus, no longer reflected the severity of the beating. The trial transcript shows that the testimony of defense witnesses conflicted as to the exact location where Vance was shot and in other particulars. This conflict may have been due to memories that had faded since the crime. However, the length of prejudicial delay in this case was approximately one and one half months. It is unlikely that the witnesses' memories or Amos's scar faded materially in that period of time. And, the fact the crime scene may have changed over time was entirely irrelevant since the jury never viewed the crime scene. We find that the prejudice factor weighs against Amos.
¶ 16. Considering the Barker factors, we find that Amos's right to a speedy trial was not violated. Though the delay in this case was presumptively prejudicial and Amos asserted his right to a speedy trial, Amos did not obtain a ruling on the speedy trial issue from the trial court. Thus, no fact-findings concerning the reason for the delay appear in the record. "Our law is clear that an appellant must present us a record sufficient to show the occurrence of the error he asserts and also that the matter was properly presented to the trial court and timely preserved." Young, 891 So.2d at 818(¶ 14). And, Amos has not shown he suffered prejudice from the delay. This issue is without merit.

*651 II. WHETHER THERE WAS JURY MISCONDUCT THAT DEPRIVED AMOS OF HIS RIGHT TO A FAIR AND IMPARTIAL JURY.
¶ 17. In this assignment of error, Amos contends that one of the jurors, Annie Gilmore, is related to his trial counsel, Billy Joe Gilmore. Specifically, Amos alleges that Annie Gilmore is attorney Gilmore's sister-in-law or ex-sister-in-law. In his appellate brief, Amos states that he noticed that this juror became agitated and showed negative body language during attorney Gilmore's presentation of the defense. Amos states that, when he brought this to the attention of attorney Gilmore, Gilmore admitted that Annie Gilmore formerly had been married to his brother.
¶ 18. There is no indication in the record that the alleged relationship of this juror was ever brought to the attention of the trial court. Amos did not raise the issue in his motion for a JNOV or a new trial. Since Amos raises this issue for the first time on appeal, it is procedurally barred. Stockstill v. State, 854 So.2d 1017, 1023(¶ 14) (Miss.2003). We observe that Amos does not contend that Annie Gilmore failed to respond truthfully to a question asked during voir dire. The court asked if any prospective jurors were related to the attorneys by marriage, but never asked if anyone formerly had been related to the attorneys by marriage. This issue is without merit.

III. WHETHER THE PROSECUTION ALLOWED THE USE OF PERJURED TESTIMONY AND WHETHER A PRIOR STATEMENT MADE BY AARON HUDSON WAS WITHHELD FROM THE DEFENSE IN VIOLATION OF THE BRADY RULE SO AS TO DEPRIVE THE DEFENDANT OF HIS RIGHT TO A FAIR TRIAL.
¶ 19. Under this heading, Amos asserts two instances of prosecutorial misconduct. He argues that the prosecution improperly offered perjured testimony from Christopher "Molly" Claiborne and that the prosecution suppressed exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Concerning Claiborne's allegedly perjured testimony, Amos points to Claiborne's statement to police that he saw Hudson obtain a gun from a black Chevrolet Impala car and give the gun to Amos. Claiborne's statement was admitted into evidence without objection. In his brief, Amos alleges that the prosecution should have known that Claiborne's statement was untrue because the police investigation had revealed that Lamonica Henderson's black Chevrolet Impala car was not at the crime scene on the evening of October 31, 2001, but had been driven to Jackson by Henderson.
¶ 20. Amos alleges that the prosecution knew the Impala was not at the crime scene and that Claiborne's testimony was perjured because police had arrested Henderson, held her for questioning, and released her from custody after concluding she had driven the Impala to Jackson on the night of the shooting. There is no record evidence supporting Amos's allegations of police knowledge of the whereabouts of the Impala at the time of the crime. Thus, Amos's contention that the prosecution knowingly offered perjured testimony by Claiborne is purely speculative. At the trial, Amos cross-examined Claiborne about his statement that Hudson had obtained the gun from the Impala before giving it to Amos. And, Claiborne's testimony conflicted with that of other witnesses, who had not seen the Impala. The jury had the opportunity to exercise its functions of assessing Claiborne's credibility in light of all of the evidence and of resolving any conflicts in the evidence. *652 Jackson v. State, 614 So.2d 965, 972 (Miss.1993). This issue is without merit.
¶ 21. Amos also contends that the prosecution, in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), suppressed a statement which Hudson made to the police on the night of the crime. Brady held that "suppression by the prosecution of evidence favorable to an accused upon request violated due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87, 83 S.Ct. 1194. In King v. State, 656 So.2d 1168, 1174 (Miss.1995), our supreme court adopted a four-prong test to determine whether a Brady violation has occurred that mandates a new trial. To establish a Brady violation, the defendant must prove:
(1) that the government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.
Id.
¶ 22. Amos alleges that the prosecution suppressed a statement that Hudson made to the police on the night of the crime. However, Amos again proceeds on the basis of assertions in his brief rather than on record evidence. There is no record evidence that Hudson gave a written or otherwise recorded statement to the police on October 31, 2001. And, Amos has made no showing that the contents of such a statement, if it indeed existed, would have been exculpatory. Therefore, Amos has failed to meet at least two prongs of the King test and has failed to establish a Brady violation. We observe that, at the trial, Amos called Hudson as a defense witness and examined him thoroughly. This issue is without merit.

IV. WHETHER THE STATE VIOLATED AMOS'S RIGHT TO FAIR TRIAL BY FAILING TO DISCLOSE ANY AGREEMENT OR DEAL WITH AARON HUDSON.
¶ 23. At the trial, Hudson corroborated part of Amos's version of events by testifying that Claiborne, Vance, and others had beaten Amos. Hudson stated that, after the beating, Amos ran back to Hudson's trailer. Amos demanded that Hudson give him a gun which Amos owned and had previously asked Hudson to keep for him. Hudson gave Amos the gun, but did not witness the shooting.
¶ 24. On appeal, Amos argues that, because Hudson gave Amos the gun, the State could have charged Hudson as an accessory before the fact to the murder of Vance. Amos surmises that, since the State did not prosecute Hudson, the State must have offered Hudson leniency in exchange for his testimony, a deal which was not revealed to Amos. Amos argues that any deal which Hudson made with the State to exchange testimony for leniency was relevant to impeach Hudson's credibility before the jury and, thus, exculpatory. He argues that the State committed a Brady violation by failing to reveal its agreement with Hudson.
¶ 25. Again, this assignment of error is based purely on speculation in Amos's appellate brief and not on evidence contained within the record. There is no indication in the record that the State had an agreement with Hudson to exchange leniency for testimony. In fact, Hudson was called as a witness by Amos, not by the State. *653 His testimony was largely favorable to Amos. Amos has not shown that the State committed a Brady violation by failing to reveal an agreement with Hudson. This issue is without merit.

V. WHETHER THE IDENTIFICATION OF AMOS AS THE SHOOTER OF THE VICTIM WAS SO UNNECESSARILY SUGGESTIVE AND CONDUCIVE TO IRREPARABLE MISTAKEN IDENTIFICATION THAT AMOS WAS DENIED DUE PROCESS OF LAW.
¶ 26. Amos contends that the identification of Amos as the person who shot Vance was unnecessarily suggestive. Usually, the suggestiveness of an identification is raised to challenge an in-court identification after a pre-trial identification has been made. Gayten v. State, 595 So.2d 409, 418 (Miss.1992). In the case sub judice, Amos was never subjected to a pre-trial identification. Instead, witnesses at the trial identified Amos in court as the person who shot Vance. In fact, Amos admitted that he shot Vance, but asserted that he did so in self-defense. Even if there had been ambiguity concerning the identity of Vance's killer, a defendant claiming that trial suggestiveness is a problem "must ordinarily take steps to avoid the problem before claiming a due process violation" such as having other persons sit with him at counsel's table, sitting elsewhere in the courtroom, or requesting a pre-trial identification. Id. Amos took none of these steps. This issue is without merit.

VI. WHETHER THE COURT ERRED IN EXCLUDING HEARSAY TESTIMONY FROM ALEXIS NOEL.
¶ 27. Alexis Noel testified on behalf of Amos. She stated that, just before the shooting, she was preparing food for her children inside the trailer she shared with Hudson. She stated that Hudson came to the door and "said something about Molly, you know, was beating up...." The prosecution objected on the basis of hearsay and the court sustained the objection. Then, Noel testified that Hudson gave Amos the gun.
¶ 28. Amos contends that the court erred by preventing Noel from stating what Hudson told her. This Court reviews the trial court's ruling admitting or excluding evidence for abuse of discretion. Ladnier v. State, 878 So.2d 926, 933(¶ 27) (Miss.2004). Further, an error in the admission or exclusion of evidence is not grounds for reversal unless the error affected a substantial right of a party. Id.; M.R.E. 103(a). Hearsay consists of an out-of-court statement offered to prove the truth of the matter asserted. M.R.E. 801(c). It is not generally admissible. M.R.E. 802. Amos argues that Hudson's statement to Noel was admissible because it was not offered for its truth, but instead to show that, when Hudson gave Amos the gun, he intended to help Amos, who was being beaten.
¶ 29. This argument is without merit. Hudson's statement to Noel was offered for its truth, that is, that Christopher "Molly" Claiborne was beating up Amos. Certainly, if the statement were taken as true, then the jury could have inferred that Hudson gave Amos the gun intending to help Amos defend himself from Claiborne's attack. But, for that inference to have been made, the jury would first have had to believe the truth of the statement: that Claiborne was beating Amos. Therefore, Hudson's statement to Noel was hearsay and the trial court acted within its discretion in excluding it. We observe that Amos was not harmed by the exclusion of the hearsay statement because its content was wholly cumulative of other testimony by Noel, Hudson, and Amos.

*654 VII. WHETHER THE STATE COMMITTED REVERSIBLE ERROR BY MAKING IMPROPER STATEMENTS DURING CROSS-EXAMINATION OF THE DEFENDANT AS WELL AS DURING CLOSING ARGUMENTS-STATEMENTS WHICH WERE SO PREJUDICIAL TO THE DEFENDANT AS TO DENY HIM HIS FUNDAMENTAL RIGHT TO A FAIR TRIAL UNDER BOTH THE STATE AND FEDERAL CONSTITUTIONS.
¶ 30. Though Amos states that this issue challenges prosecutorial misconduct in the form of improper arguments by the prosecuting attorney, under this heading he primarily contests the trial court's grant of Jury Instruction S-5 over Amos's objection. The instruction stated that, if the jury believed that Amos fled or went into hiding after the shooting, that such flight or hiding was to be considered along with all of the other evidence in the case. The instruction further directed the jury to determine from all the facts whether such flight resulted "from a conscious sense of guilt or whether it was caused by other things" and allowed the jury to "give it such weight as you think it is entitled" in determining Amos's guilt or innocence.
¶ 31. A defendant's flight is admissible as evidence of consciousness of guilt. However, a flight instruction should be given only when the defendants' flight is (1) unexplained; and (2) when the circumstances of the flight have considerable probative value. Austin v. State, 784 So.2d 186, 194(¶ 24) (Miss.2001) (citing Pannell v. State, 455 So.2d 785, 788 (Miss.1984)). A flight instruction or evidence of a defendant's flight is improper when the evidence of flight is probative of things other than guilt or guilty knowledge of the crime charged. Fuselier v. State, 702 So.2d 388, 391 (Miss.1997). Thus, evidence of flight was erroneously admitted in a case where the defendant's flight after the crime could have been equally probative of his guilt or of his status as an escaped prisoner. Id. We have reversed the grant of a flight instruction in cases where, due to circumstances other than guilty knowledge, "it would have been illogical for the defendant not to have run." Austin, 784 So.2d at 195.
¶ 32. Amos argues that the flight instruction was erroneous because his flight to Chicago was explained by his testimony that, after having been beaten by Vance, Claiborne and others, he was afraid that remaining in Tchula would cost him his life. Since his flight was explained, his argument goes, the first prong of the Pannell test was unmet. We disagree. Although Amos offered a reason for his return to Chicago, his reason does not fully and logically explain why he left the jurisdiction after the altercation and remained absent until his capture and extradition back to Mississippi. According to his own testimony, Amos was aware that he had fired a gun in a crowd, potentially causing serious injuries. Amos admitted that, four days after the shooting, he discovered that someone had been killed, yet he remained in Chicago until he was forced to submit to judicial process. We find that Amos's flight was unexplained and that the circumstances of his removal to Chicago had considerable probative value. The jury was properly allowed to consider the evidence of Amos's flight and was properly instructed.
¶ 33. Amos makes general assertions that the State's closing argument was improper, but he points to no specific instances of error and made no objections during the closing argument. Therefore, this issue is procedurally barred. Carr v. State, 655 So.2d 824, 853 (Miss.1995).

*655 VIII. WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE JURY'S REJECTION OF AMOS' SELF DEFENSE CLAIM WHEN THE JURY DID NOT HAVE ALL OF THE EVIDENCE WHICH WHEN VIEWED IN ITS TOTALITY WOULD LEAD A REASONABLE PERSON TO CONCLUDE THAT AMOS ACTED AS AN OBJECTIVELY REASONABLE PERSON IN DEFENSE OF HIS LIFE.
¶ 34. Amos filed a motion for a JNOV, challenging the sufficiency of the evidence. The trial court denied the motion. Amos argues that the ruling was error because the evidence was insufficient to enable the jury to reject his defense of self-defense and to find him guilty of murder. In reviewing a challenge to the sufficiency of the evidence, this Court views the evidence in the light most favorable to the verdict. Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005). If any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the Court will uphold the verdict. Id. We are mindful that "[m]atters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury." Harveston v. State, 493 So.2d 365, 370 (Miss.1986).
¶ 35. Amos argues that the State's witnesses were not credible and did not substantially contradict the testimony of Amos and his witnesses. We disagree and find that sufficient evidence supported the verdict. Certainly, the jury was presented with conflicting witness testimony concerning the events of October 31, 2001. The defense witnesses, consisting of Hudson, Noel, and Amos, testified that Amos had been beaten by Vance and Claiborne prior to the shooting. But, Hudson and Noel said that they did not see the shooting. Rather, Hudson and Noel testified that Hudson gave Amos the gun and then they heard gunshots. Amos testified that, as he was being beaten, Hudson gave him the gun and, in fear for his life, he fired it randomly at the crowd and later discovered that he had shot Vance. The testimony of three eyewitnesses for the State substantially contradicted Amos's version of the shooting. Katrina Venable, Christopher Claiborne, and Vance's brother Kentaiss Vance all testified that Amos approached Vance from behind and began shooting at him. Vance fell down, and Amos then stood over Vance and shot him again. The results of the autopsy supported the testimony of the witnesses for the State. The autopsy showed that Vance had sustained only rear-entry bullet wounds and that the two bullet wounds to his head had a trajectory that was consistent with Vance having been on his knees or having fallen down when the shots were fired. The evidence was sufficient to enable a reasonable juror to have rejected Amos's self-defense theory and to have found Amos guilty of murder. This issue is without merit.

IX. WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 36. Amos filed a motion for a new trial, challenging the weight of the evidence. When this Court reviews an argument that the verdict was against the overwhelming weight of the evidence, we "must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Collins v. State, 757 So.2d 335, 337(¶ 5) (Miss.Ct.App.2000). We give the State the benefit of all favorable inferences that may reasonably be drawn from the evidence. Id. We will reverse only in those cases where the verdict is so contrary to the overwhelming weight of the *656 evidence that to allow it to stand would sanction an unconscionable injustice. Id.
¶ 37. Although there were conflicts in the testimony, the jury's verdict was not against the overwhelming weight of the evidence. As set out above, in our discussion of the sufficiency of the evidence, three witnesses saw Amos stand over Vance and fire the fatal shot. Though two witnesses saw Amos being beaten, only Amos testified that he shot Vance accidentally while defending himself from the beating. Even if the jury believed that Amos had been beaten by Vance and Claiborne before the shooting, the jury justifiably could have found from the testimony and the autopsy results that, after the beating concluded, Amos obtained the gun from Hudson and killed Vance. The jury was within its right to reject Amos's theory of self-defense based on the evidence presented. This issue is without merit.

X. WHETHER THE ASSISTANCE AMOS RECEIVED FROM HIS ATTORNEY WAS INADEQUATE AND INEFFECTIVE.
¶ 38. Amos, with new appellate counsel, argues that his trial counsel was constitutionally ineffective because counsel failed to file critical motions, failed to subject the State's case to a meaningful adversarial setting, and failed to investigate all of the information relating to Amos's innocence. Amos has attached extra-record documents to his brief in support of his claim. In Read v. State, 430 So.2d 832, 841 (Miss.1983), the supreme court established that a convicted criminal is permitted to raise the issue of ineffective assistance of counsel on direct appeal. However, when this issue is raised, this Court's review is strictly limited to the appellate record. Id. We may reach the merits of the claim only when "(a) ... the record affirmatively shows ineffectiveness of constitutional dimensions, or (b) the parties stipulate that the record is adequate and the Court determines that findings of fact by the trial judge able to consider the demeanor of witnesses, etc. are not needed." Id. If these two conditions are unmet, this Court should review the other issues in the case. If we otherwise affirm the conviction, we should do so without prejudice to the defendant's right to raise the issue of ineffective assistance of counsel in appropriate post-conviction proceedings. Id.
¶ 39. The parties to the instant case have not stipulated that the record is adequate to enable this Court to adjudicate the merits of Amos's ineffective assistance of counsel argument. Therefore, we are limited to a review of the record to determine whether the record "affirmatively shows ineffectiveness of constitutional dimensions" such that the trial court should have declared a mistrial or ordered a new trial sua sponte. Id.; Colenburg v. State, 735 So.2d 1099, 1102(¶ 8) (Miss.Ct.App.1999). In assessing the effectiveness of trial counsel, this Court applies the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). Under Strickland, the defendant has the burden to show that (1) trial counsel's performance was deficient; and (2) that the defendant was prejudiced by such deficiency such that he was deprived of a fair trial. Perkins v. State, 487 So.2d 791, 793 (Miss.1986). A defendant's allegations of counsel's deficient performance must be made with specificity and detail. Id. There is a "`strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' . . . [i]n short, defense counsel is presumed competent." Handley v. State, 574 So.2d 671, 683 (Miss.1990) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052)). The presumption may be *657 rebutted by a showing that, but for counsel's deficient performance, a different result would have occurred. Leatherwood v. State, 473 So.2d 964, 968 (Miss.1985). A reviewing court must consider the totality of the circumstances in determining whether the defendant has shown that counsel was ineffective. McQuarter, 574 So.2d at 687.
¶ 40. In reviewing this issue, we are unable to consider the extra-record documents which Amos has attached to his brief. Read, 430 So.2d at 841. The only specific allegations of ineffective assistance of counsel made by Amos which are apparent from the record are: (1) that his counsel did not file a written request for discovery; (2) that when the State called Kentaiss Vance as a witness, his counsel stated he had been unaware that Vance was on the witness list; and (3) that counsel did not bring Amos's pro se speedy trial motion to the attention of the trial court.
¶ 41. After reviewing the record in this case, considering the totality of the circumstances, we cannot say that these actions by Amos's counsel were so deficient that the trial court was bound to have declared a mistrial. Amos's trial counsel orally requested discovery, thoroughly cross-examined all of the State's witnesses, including Kentaiss Vance; called two witnesses other than Amos in support of Amos's self-defense theory; and participated in the crafting of jury instructions. Without record evidence as to the reason Amos was not brought to trial within eight months of the attachment of his right to a speedy trial, we must assume that trial counsel's decision not to pursue the speedy trial issue was strategic. Amos's trial counsel appears to have subjected the State to a meaningful adversarial setting and it does not appear that, but for the deficiencies alleged by Amos, the result would have been any different. See Lyle v. State, 908 So.2d 189, 197(¶ 45) (Miss.Ct.App.2005). We find that the record does not affirmatively show that Amos received ineffective assistance of counsel. Amos remains free to pursue the issue of ineffective assistance of counsel in appropriate post-conviction relief proceedings. Read, 430 So.2d at 841.

XI. WHETHER THE CUMULATIVE ERRORS IN THIS CASE DENIED AMOS THE RIGHT TO A FAIR TRIAL.
¶ 42. Amos argues that the cumulative effect of errors by the trial court denied him a fair trial. We have found that no errors occurred in this case. Where there is no error as to any part, there can be no reversible error as to the whole. See McFee v. State, 511 So.2d 130, 136 (Miss.1987). We affirm the judgment of the trial court.
¶ 43. THE JUDGMENT OF THE CIRCUIT COURT OF HOLMES COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO HOLMES COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, GRIFFIS, BARNES AND ISHEE, JJ. CONCUR.
NOTES
[1] The record does not indicate the date of Amos's capture in Illinois.