987 So.2d 1035 (2008)
Antonio PAGE a/k/a Antonio Lavon Page, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2007-KA-00334-COA.
Court of Appeals of Mississippi.
April 15, 2008.
Rehearing Denied August 5, 2008.
Brenda Jackson Patterson, Leslie S. Lee, Jackson, Jonathan Michael Farris, attorneys for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before LEE, P.J., CHANDLER and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. On January 30, 2007, Antonio Page was convicted in the Forrest County Circuit Court of the murder of his sister, Cynthia Page. He was sentenced, as a habitual offender, to life in prison without the benefit or possibility of parole. Page appeals, arguing that he was denied effective *1036 assistance of counsel. We find that the record does not affirmatively show ineffective assistance of counsel; therefore, we deny Page's claim without prejudice to his right to raise it in post-conviction proceedings.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On August 30, 2005, one day after Hurricane Katrina, Page was at his grandmother's house, along with his sister, Cynthia, and numerous other family members. Page began drinking alcohol at approximately nine o'clock in the morning and drank throughout the day. Fred Burns contacted Cynthia later in the day and told her that he needed the children to come to his house and help clean debris from the yard. Four children subsequently went to Burns's home. When the children complained of thirst, Burns called Cynthia and told her that he and the children were going to go get some ice and asked her if she needed some as well. Burns and the children then went to the house of Page's grandmother, where numerous other family members had ice chests waiting for Burns to take and fill them with ice.
¶ 3. Burns returned two or three hours later with no ice; an argument subsequently commenced between Burns and Page when Page assailed Burns for not getting any ice and accused him of not taking care of his children. As the argument continued, Page approached Burns with a beer bottle. Burns then retrieved his pocket knife and told Page to leave him alone. As Burns and the children got in the truck, Burns told Page to come to Burns's house if Page had a problem with him and they would "settle it." When Burns was driving off, Page ran up to the driver's side window of the truck and threw the beer bottle through the window, causing glass to shatter all over Burns and the children in the back seat.
¶ 4. Burns testified that he then decided that he was going to kill Page; so he drove to his home and retrieved his pistol. He returned to the home of Page's grandmother, exited his truck, and pointed the pistol at Page, who was standing in the yard. When Burns's daughter yelled at him not to shoot Page, Burns hesitated, and Page charged toward him. Burns hit Page on the head with the gun, and the gun fired, although no one was struck by the bullet. Page then charged at Burns again, and Burns hit him in the head with the gun a second time. Page ran away through a vacant lot adjacent to his grandmother's house. Page's wife, Youlanda, testified that Burns fired the gun at Page as he was running away. Burns then slashed two of the tires on Page's van and left. Page's mother testified that, as a result of the blows, Page was bleeding from his head, nose, and mouth. The police arrived and advised Page to get medical assistance for his head injury; however, Page refused.
¶ 5. Page left in his damaged van but later returned. He approached Cynthia, who was sitting in a lawn chair in the yard, and shot her in the head at point blank range. Cynthia had no weapon and said nothing to Page prior to his shooting her. Page's wife, mother, and other sister, who were present at the time of the shooting, testified that Page did not appear to be aware of what he was doing when he shot Cynthia.
¶ 6. The jury convicted Page as a habitual offender for the murder of Cynthia, and the trial judge sentenced him to life in prison without the possibility of parole. Page now appeals his conviction and sentence, arguing that he was denied effective assistance of counsel when his attorney failed to investigate whether the blows to *1037 the head that Page suffered resulted in a mental or psychological condition which caused him to shoot his sister.

ANALYSIS
¶ 7. Page's sole argument on appeal is that he was denied effective assistance of counsel. Page argues that his attorney was ineffective in failing to investigate the possibility that the blows to the head he suffered resulted in a mental or psychological condition which caused him to shoot his sister. He also claims that his attorney should have retained an expert witness to testify at trial regarding his impaired mental status.
¶ 8. He raises this issue for the first time on direct appeal. "While this Court may consider the merits of a claim of ineffective assistance of counsel raised for the first time on direct appeal, it is unusual to do so because `[w]e are limited to the trial court record in our review of the claim and there is usually insufficient evidence within the record to evaluate the claim.'" Wynn v. State, 964 So.2d 1196, 1200(¶ 9) (Miss.Ct. App.2007) (quoting Wilcher v. State, 863 So.2d 776, 825 (¶ 171) (Miss.2003)). "Our supreme court instructs that, on direct appeal, the entire record should be reviewed." Id. (citing Read v. State, 430 So.2d 832, 841 (Miss.1983)). "This Court will reach the merits of an ineffective assistance claim only in instances where, `(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.'" Id. (citing Wilcher, 863 So.2d at 825 (¶ 171)). "Where the record is insufficient to support a claim of ineffective assistance, `[t]he appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief.'" Id. (citing Aguilar v. State, 847 So.2d 871, 878(¶ 17) (Miss.Ct. App.2002)).
¶ 9. In the case sub judice, the parties have made no stipulation as to the adequacy of the record; therefore, we must inquire whether the record affirmatively shows that Page was denied effective assistance of counsel. In making this inquiry, we must determine whether Page's representation was "so lacking in competence that it becomes apparent or should be apparent that it is the duty of the trial judge to correct it so as to prevent a mockery of justice." Id. (¶ 10) (quoting Ransom v. State, 919 So.2d 887, 889(¶ 9) (Miss.2005)).
¶ 10. The requirements of proving ineffectiveness of counsel are as follows:
To prove a claim of ineffective assistance, a defendant must show (1) that his defense counsel's performance was deficient, and (2) that the deficient performance was prejudicial to his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Swington v. State, 742 So.2d 1106, 1114(¶ 22) (Miss.1999). "The determination of whether counsel's performance was both deficient and prejudicial must be determined from the `totality of the circumstances.'" Cole v. State, 666 So.2d 767, 775 (Miss.1995) (citation omitted). The defendant bears the burden of proving both prongs of Strickland and faces a rebuttable presumption "that trial counsel's conduct is within the wide range of reasonable conduct and that decisions made by counsel are strategic." Edwards v. State, 615 So.2d 590, 596 (Miss.1993) (citing Leatherwood v. State, 473 So.2d 964, 969 (Miss.1985)). To rebut this presumption the defendant must show that, ["]but for counsel's unprofessional errors, the result of *1038 the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
Wynn, 964 So.2d at 1200(¶ 11).
¶ 11. We have reviewed the record in this case and are not satisfied that it affirmatively demonstrates ineffective assistance of counsel. First, as support for his argument that his counsel was ineffective in failing to investigate whether he suffered from a mental or psychological condition, Page relies on a Johns Hopkins Family Health Book for the proposition that a blow to the head can cause brain injuries which can cause, inter alia, behavioral changes. This book does not appear in the record and, therefore, is not to be considered by this Court on appeal. See Amos v. State, 911 So.2d 644, 656(¶ 38) (Miss.Ct.App.2005) (stating that, when ineffective assistance of counsel is raised on direct appeal, "this Court's review is strictly limited to the appellate record"). Second, while we make no determination as to whether Page's counsel should have investigated the possibility that Page suffered a brain injury, we cannot determine from the record whether counsel in fact failed to conduct such an investigation. The mere fact that there was no evidence presented at trial regarding Page's mental or psychological state does not mean Page's counsel did not investigate the issue. As the State notes, defense counsel could have investigated Page's mental state and been unable to glean any useful evidence for Page's defense. All we have are Page's unsubstantiated allegations that his counsel failed to investigate his supposed impaired mental state. This is inadequate. See Colenburg v. State, 735 So.2d 1099, 1102(¶ 6) (Miss.Ct.App.1999) ("A court of appeals only acts upon matters contained in the official record and not upon assertions in briefs.").
¶ 12. Because we cannot determine from the record before us that Page received ineffective assistance of counsel, we deny relief without prejudice to Page's right to raise this issue in post-conviction proceedings.
¶ 13. THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER, WITHOUT THE POSSIBILITY OF PAROLE OR EARLY RELEASE, IS AFFIRMED WITHOUT PREJUDICE TO THE APPELLANT'S RIGHT TO BRING APPROPRIATE POST-CONVICTION PROCEEDINGS. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.