# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00655-COA

GUSTAVO P. GALVAN                                                          APPELLANT

v.

STATE OF MISSISSIPPI                                                         APPELLEE

DATE OF JUDGMENT:              03/17/2022
TRIAL JUDGE:                  HON. CALEB ELIAS MAY
COURT FROM WHICH APPEALED:    NESHOBA COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
                              BY: MOLLIE MARIE McMILLIN
                              GUSTAVO P. GALVAN (PRO SE)
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY: ALLISON ELIZABETH HORNE
DISTRICT ATTORNEY:            STEVEN SIMEON KILGORE
NATURE OF THE CASE:           CRIMINAL - FELONY
DISPOSITION:                  AFFIRMED - 11/21/2023
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., McCARTY AND EMFINGER, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Following a jury trial, Gustavo Galvan was convicted of statutory rape, sexual battery, gratification of lust, and incest for molesting and having sex with his thirteen-year-old daughter. Through appointed appellate counsel, Galvan argues that the trial court erred by denying him an interpreter. In a pro se supplemental brief, Galvan argues that the trial court erred by admitting his statements to law enforcement, by violating his right to confront witnesses against him, and by denying his motion for a directed verdict on the charge of incest. He also argues that his trial counsel provided ineffective assistance. We find no error

and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On January 17, 2021, thirteen-year-old M.D.[1] was living with her father (Galvan) and Galvan's girlfriend (Tracey Waiter) in Neshoba County. That day, M.D. accompanied Galvan to a local Walmart, where she attempted to exchange phone numbers with a boy. Displeased, Galvan confiscated M.D.'s cell phone. After they returned home, M.D. told Galvan that she would do anything to get her phone back. Galvan told M.D. to pull her breasts out of her shirt and then sucked on M.D.'s breasts, leaving "hickeys." Galvan then inserted two fingers into M.D.'s vagina. Finally, he penetrated M.D.'s vagina with his penis, telling M.D. to "shut up and be quiet" while he raped her.

¶3.     The next morning, M.D. told one of her friends what Galvan had done to her. The friend's mother picked up M.D. and called law enforcement. A rape kit was performed on M.D., and a forensic interview was conducted a few days later. Galvan was arrested, waived his *Miranda* rights,[2] and agreed to speak to law enforcement. In his initial interview, Galvan confessed and signed a written confession. Several days later, Galvan again waived his *Miranda* rights, confessed again, and signed a second written confession.

¶4.     A Neshoba County grand jury indicted Galvan for statutory rape (Count I), sexual battery (Count II), gratification of lust (Count III), and incest (Count IV). Following a jury trial, Galvan was convicted of all counts. The court sentenced Galvan to concurrent terms

---

[1] We use the minor victim's initials to protect her identity.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

in the custody of the Department of Corrections of forty years with fifteen years suspended and twenty-five years to serve for Count I, forty years with fifteen years suspended and twenty-five years to serve for Count II, ten years to serve for Count III, and ten years to serve for Count IV. Galvan filed a motion for a new trial, which was denied, and a notice of appeal.

## ANALYSIS

¶5. Through his appointed appellate counsel, Galvan argues that the trial court erred by denying him a court-appointed interpreter. Galvan also filed a pro se supplemental brief in which he argues that the trial court erred by admitting his statements to law enforcement, violating his right to confront the witnesses against him, and denying his motion for a directed verdict on Count IV (incest). Galvan also argues that his trial counsel was ineffective. We find no reversible error and affirm.

### I. Galvan was not entitled to a court-appointed interpreter.

¶6. Prior to trial, Galvan, a native of Mexico, asked the court to appoint a Spanish-English interpreter, and the court held a hearing on Galvan's motion. At that hearing, both M.D. and Waiter testified that neither of them spoke Spanish and that Galvan only spoke to them in English. Waiter, who had lived with Galvan since 2017, testified that she was able to explain messages from Galvan's attorney to Galvan and that Galvan could understand her explanations in English. Galvan's attorney also testified, stating that he spoke to Galvan in English and that Galvan understood him, although sometimes the attorney would have "to explain things [a] third or fourth time."

3

¶7.     Investigator Gordon Adkins and Neshoba County Sheriff Eric Clark, who had interviewed Galvan, both testified that Galvan spoke only in English to them. They testified that they were able to communicate with Galvan and that Galvan indicated he understood them. Case workers from the Mississippi Department of Child Protection Services and the Neshoba County Department of Human Services also testified that they had dealt with Galvan on prior occasions and had communicated with him in English without the need of an interpreter.

¶8.     The trial judge concluded the hearing by questioning Galvan in English. The court found that Galvan's lack of familiarity with some of his constitutional rights was "more a matter of education[3] and not a matter of communication." The court also found that Galvan was fully capable of participating in the trial, answering questions, and communicating with his attorney in English. Thus, the court denied Galvan's motion for an interpreter.

¶9.     As the trial court recognized, Galvan's motion for an interpreter was governed by Mississippi Code Annotated section 9-21-79(1) (Rev. 2019). At the time of Galvan's trial, that statute provided in relevant part that "[a]n interpreter is needed and a court interpreter shall be appointed when the judge determines, after an examination of a party," that "the party cannot understand and speak English well enough to participate fully in the proceedings and to assist counsel." *Id.*[4] Whether a party can understand and speak English well enough

---

[3] Galvan testified that he left school after the second grade and could not read or write.

[4] The Legislature amended this statute after the trial in this case. H.B. 1217, § 4 (2023 Reg. Sess.). In addition, at the time of Galvan's trial, Mississippi Code Annotated section 99-17-7 (Rev. 2020), provided that "when necessary," a court could appoint an

to participate in a trial and assist his attorney is a factual determination. Therefore, we will not reverse the trial court's finding of fact unless it is clearly erroneous.[5]

¶10. Here, the trial judge held a pre-trial hearing on Galvan's motion for an interpreter and heard testimony from Galvan, Galvan's attorney, M.D., Waiter, Adkins, Clark, and two social workers. None of these witnesses spoke Spanish, yet they were all able to communicate with Galvan *in English*. Finally, the trial judge personally questioned Galvan in English and found that an interpreter would not be necessary. Substantial evidence supports the trial court's finding, and it is not clearly erroneous. Therefore, we find no error in the trial court's ruling.

## II. Galvan's pro se arguments are without merit.

### A. The trial court did not err by admitting Galvan's statements to law enforcement.

¶11. At trial, the State introduced two statements that Investigator Adkins drafted to memorialize Galvan's oral confessions. Galvan argues that the trial court erred by admitting those two statements because (1) he could not fully understand English well enough to make a knowing and intelligent waiver, and (2) the statements were not given voluntarily because he only waived his rights thinking he would be released.

¶12. Galvan made the first statement two days after the incident while in custody. Adkins

---

interpreter for an indigent criminal defendant at the county's expense. The Legislature also amended this statute after Galvan's trial. H.B. 1217, § 7 (2023 Reg. Sess.). Galvan was represented by retained counsel at trial but was allowed to appeal in forma pauperis.

[5] *See, e.g.*, *Stokes v. State*, 548 So. 2d 118, 122 (Miss. 1989) ("So long as the court applies the correct legal standards, we will not overturn a finding of fact made by a trial judge unless it [is] clearly erroneous.").

advised Galvan of his *Miranda* rights, and Galvan acknowledged that he understood his rights and signed a written *Miranda* waiver. Galvan then confessed that he had sucked M.D.'s breasts, leaving "hickeys," and had inserted at least one finger into her vagina, while expressing remorse for his actions. Adkins reduced Galvan's statement to writing and read it to him. Galvan stated that he understood and agreed with the statement, and he signed and initialed it.

¶13. Several days later, Adkins and Sheriff Clark interviewed Galvan. Galvan was again advised of his *Miranda* rights, acknowledged that he understood his rights, and signed a *Miranda* waiver. Galvan again confessed orally, and Adkins reduced Galvan's confession to writing. In his second statement, Galvan again confessed to leaving hickeys on M.D.'s breast and inserting his finger into her vagina. Galvan also confessed that he inserted his penis into M.D.'s vagina and had sex with "her for one or two minutes." Adkins read the statement to Galvan, and Galvan stated that he agreed with the statement and signed and initialed it.

¶14. A suppression hearing was held during trial outside the presence of the jury. Adkins, Clark, and Galvan testified during the hearing. Both Adkins and Clark testified that Galvan understood his rights, spoke to them only in English, and voluntarily waived his *Miranda* rights without coercion or promises of leniency from them. In contrast, Galvan claimed that he did not understand his rights and could not fully understand what was occurring at the time. The trial court found that the testimony of Adkins and Clark was detailed, consistent, and credible, whereas Galvan's claim of coercion lacked detail and specificity. The trial

court further found that Galvan's waivers and statements were all given knowingly, intelligently, and voluntarily. Therefore, the trial court denied Galvan's motion to suppress.

¶15. "This Court will reverse a trial court's finding that a confession is admissible only when an incorrect legal standard was applied, manifest error was committed, or the decision is contrary to the overwhelming weight of the evidence." *Martin v. State*, 871 So. 2d 693, 701 (¶30) (Miss. 2004) (quoting *Duplantis v. State*, 644 So. 2d 1235, 1243 (Miss. 1994)). "[I]f the judge based his finding upon appropriate principles of law . . . and the finding is supported by the facts (i.e., by substantial evidence) . . . then this Court may not reverse." *Chim v. State*, 972 So. 2d 601, 604 (¶11) (Miss. 2008) (quoting *Holland v. State*, 587 So. 2d 848, 860 (Miss. 1991)). Thus, "[o]nce the trial judge has determined that a confession is admissible, the defendant has a heavy burden in attempting to reverse that decision on appeal." *Cruz v. State*, 305 So. 3d 149, 163 (¶43) (Miss. Ct. App. 2020) (quoting *Baggett v. State*, 793 So. 2d 630, 633 (¶7) (Miss. 2001)).

¶16. A waiver of *Miranda* rights must be "made voluntarily, intelligently, and knowingly." *Brown v. State*, 983 So. 2d 1059, 1066 (¶28) (Miss. 2008) (quoting *Coverson v. State*, 617 So. 2d 642, 647 (Miss. 1993)). "[A] waiver is voluntary if it is the product of a free and deliberate choice rather than intimidation, coercion or deception." *Id.* at 1066-67 (¶28). "[A] waiver is knowing and intelligent if it is made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 1067 (¶28) (quotation marks omitted).

¶17. In a similar case, our Supreme Court affirmed a trial court's finding that a defendant

7

with a limited understanding of English had made a knowing, intelligent, and voluntary waiver of his *Miranda* rights. *Chim*, 972 So. 2d at 606-07 (¶¶17-19). In that case, the officers who questioned the defendant testified that they did not threaten the defendant or offer any promises to him. *Id.* at (¶18). In addition, the defendant's wife testified that "she was not fluent in Spanish; hence, she and [the defendant] communicated in English." *Id.* Based on this testimony, the trial court denied the defendant's motion to suppress, and the Supreme Court affirmed. *Id.* at (¶¶18-19).

¶18.    Galvan's case is no different. During the suppression hearing, Adkins and Clark both testified that they did not make any threats or promises, that Galvan spoke to them in English, that he understood his *Miranda* rights, and that he voluntarily waived those rights. Prior to trial, the trial court also heard the testimony of other witnesses regarding Galvan's ability to comprehend and communicate in English. There is substantial evidence to support the trial court's finding that Galvan's *Miranda* waivers and oral and written confessions were given knowingly, intelligently, and voluntarily. Therefore, the trial court did not err by denying Galvan's motion to suppress.

### B.    Galvan waived any objection based on the Confrontation Clause.

¶19.    Galvan next claims that his right to confrontation was violated when the trial court allowed testimony regarding the rape kit and forensic interview despite Galvan not being able to cross-examine the individuals who analyzed the rape kit and conducted the interview. The Sixth Amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

U.S. Const. amend. VI. As interpreted by the United States Supreme Court, this means that when an "out-of-court statement is 'testimonial' in nature, the statement is generally not admissible unless the declarant is unavailable to testify in court, and the defendant has had a prior opportunity to cross-examine him or her." *Anderson v. State*, 1 So. 3d 905, 914-15 (¶25) (Miss. Ct. App. 2008) (citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004)). But this Court will refuse to review such a claim absent a timely, specific objection. *Murray v. State*, 345 So. 3d 610, 618 (¶17) (Miss. Ct. App. 2022) (quoting *Morment v. State*, 315 So. 3d 475, 482-83 (¶31) (Miss. Ct. App. 2020), *cert. denied*, 314 So. 3d 1162 (Miss. 2021)). Here, Galvan failed to object to any testimony offered on the ground that it violated his right to confrontation. Therefore, this issue is procedurally barred.

### C. There is sufficient evidence to support Galvan's conviction of incest.

¶20. Galvan argues that his incest conviction must be reversed because the State did not introduce DNA evidence that M.D. is his biological daughter. This issue is without merit. "The statute proscribing incest requires proof of 'a single act of adultery or fornication' between 'persons who are prohibited from marrying by reason of blood.'" *Williams v. State*, 89 So. 3d 676, 683 (¶19) (Miss. Ct. App. 2012) (quoting Miss. Code Ann. § 97-29-5). "Additionally, the defendant must have full knowledge of the relationship between himself and the other participant." *Id.* (quotation marks omitted). There is no requirement that the blood relationship be proved by DNA evidence. Testimony that the defendant knew the victim was his daughter is sufficient to support the conviction. *Id.* Here, M.D. testified that Galvan was her father, and Galvan acknowledged to law enforcement—including in both of

9

his signed statements—that M.D. was "[his] daughter." There is ample evidence to support Galvan's conviction of incest. Therefore, this issue is without merit.

### D. Galvan fails to establish that his trial counsel provided ineffective assistance.

¶21. A claim of ineffective assistance of counsel may be asserted on direct appeal when the defendant is represented by appellate counsel who did not represent him at trial. *Ellis v. State*, 281 So. 3d 1092, 1099 (¶20) (Miss. Ct. App. 2019). "Generally," however, "ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020) (brackets omitted) (quoting *Bell v. State*, 202 So. 3d 1239, 1242 (Miss. 2016)). "This Court will address such claims on direct appeal when [1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id.* (quotation marks omitted). In addition, we may address such "claims on direct appeal when the record affirmatively shows that the claims are without merit." *Id.* (citations omitted). When the record is insufficient to address an ineffective assistance claim on direct appeal, we deny relief without prejudice to the defendant's right to present the claim in a properly filed motion for post-conviction relief. *Johnson v. State*, 196 So. 3d 973, 975 (¶8) (Miss. Ct. App. 2015).

¶22. To prevail on a claim of ineffective assistance, the defendant must show *both* (1) "that counsel's performance was deficient"—i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment"—*and* (2) that he was prejudiced as a result—i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Stated differently, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The defendant "bears the burden of proving both prongs of *Strickland*." *Ravencraft v. State*, 989 So. 2d 437, 443 (¶31) (Miss. Ct. App. 2008). "If either prong is not met, the claim fails." *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006).

¶23. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Therefore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotation marks omitted). "Our Supreme Court has stated that, 'with respect to the overall performance of the attorney, counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim.'" *Pinter v. State*, 221 So. 3d 378, 386 (¶19) (Miss. Ct. App. 2017) (brackets omitted) (quoting *Carr v. State*, 873 So. 2d 991, 1003 (¶27) (Miss. 2004)).

### 1. The record is inadequate to address some of Galvan's claims.

¶24. We conclude that the record is inadequate to address Galvan's claims that his trial

11

counsel provided ineffective assistance by (1) failing to interview the forensic interviewer and the lab technician who processed the rape kit, (2) failing to obtain an expert witness to testify regarding Galvan's medical conditions and ability to communicate in English, (3) failing to interview M.D.'s uncle, who Galvan alleges was also accused of sexual abuse by M.D.; (4) giving flawed advice regarding an alleged plea offer; and (5) failing to "research[] arrest records" to impeach Adkins and Clark. "By [their] nature, th[ese] particular claim[s] depend[] on . . . speculation about . . . evidence that is not part of the record in this appeal." *Murray*, 345 So. 3d at 624 (¶39).[6] Therefore, the record is inadequate to address these claims, and we dismiss them without prejudice to Galvan's right to raise them in a properly filed motion for post-conviction relief. *Murray*, 345 So. 3d at 624 (¶39).

**2. Trial counsel did not provide ineffective assistance by not moving to exclude or objecting to testimony about the rape kit or forensic interview.**

¶25. Galvan argues that his counsel should have objected to testimony regarding the rape kit and forensic interview. However, the rape kit produced no semen or anything else of evidentiary value. Thus, it only could have helped Galvan's case. In addition, the video of the forensic interview was not played for the jury or admitted into evidence at trial. When Adkins began to testify about a statement M.D. made during the interview, Galvan's trial counsel promptly objected and moved for a mistrial. The trial court denied the motion for a mistrial but warned the State not to "get into any kind of hearsay statements that were made

---

[6] We also note that "[t]he mere fact that there was no evidence presented at trial . . . does not mean [trial] counsel did not investigate the issue." *Page v. State*, 987 So. 2d 1035, 1038 (¶11) (Miss. Ct. App. 2008).

12

during the interview." Accordingly, these issues are without merit.

### 3. Trial counsel did not provide ineffective assistance by not moving to dismiss charges on double jeopardy grounds.

¶26. Next, Galvan argues that his trial counsel was ineffective because he did not argue that his conviction of four separate counts violated double jeopardy under *Blockburger v. United States*, 284 U.S. 299 (1932). Under *Blockburger*, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.*

¶27. Each of the crimes for which Galvan was convicted required proof of at least one unique element. Galvan's conviction for statutory rape required proof that he engaged in sexual intercourse with M.D. Miss. Code Ann. § 97-3-65(1)(b) (Rev. 2020). His conviction for sexual battery required proof that he penetrated M.D. by inserting his finger into her vagina. Miss. Code Ann. § 97-3-95(1)(d) (Rev. 2020). His conviction for gratification of lust required proof that he touched M.D.'s chest for the purpose of satisfying his sexual desires. Miss. Code Ann. 97-5-23(1) (Rev. 2020). Finally, his conviction for incest required proof that M.D. was his daughter. Miss. Code Ann. § 97-29-5 (Rev. 2020). Because each crime required proof of at least one unique element, Galvan's convictions do not violate double jeopardy. Therefore, trial counsel did not provide ineffective assistance by not making such an argument. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

13

## 4.    Galvan was lawfully sentenced.

¶28.    Galvan also argues that his trial counsel allowed him "to be illegally sentenced" for sexual battery.  This issue is without merit because Galvan's sentence for sexual battery does not exceed the statutory maximum sentence of life imprisonment.  Miss. Code Ann. § 97-3-101(3) (Rev. 2020).

## CONCLUSION

¶29.    The trial court did not err by denying Galvan's request for an interpreter, and Galvan's remaining issues are without merit.  Any ineffective assistance claims that this opinion does not address on the merits are dismissed without prejudice to Galvan's right to raise those issues in a properly filed motion for post-conviction relief.

¶30.    **AFFIRMED.**

**BARNES, C.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.  CARLTON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**